**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | | |
|---|---|---|
| GEORGE MOORE, individually and on behalf of others similarly situated, | ) ) | Case No. 1:20-cv-06206 |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| AMERICAN SERVICE INSURANCE | ) | Hon. Judge John F. Kness |
| AGENCY LLC and BENEFYTT | ) | Hon. Mag. Judge Jeffrey Cole |
| TECHNOLOGIES, INC., | ) | |
| Defendants. | ) | |

**PLAINTIFF'S MOTION TO COMPEL JURISDICTIONAL DISCOVERY**

**OPPOSED**

# TABLE OF CONTENTS

**Page**

I.    BACKGROUND ...................................................................................................2

II.   LEGAL STANDARD..........................................................................................3

III.  ARGUMENT .......................................................................................................3

    A.    Plaintiff's allegations are sufficient to warrant the limited jurisdictional discovery requested. ...................................................................................................4

    B.    Defendants' responses are evasive and improper. ....................................................6

    C.    Plaintiff's requests are relevant to personal jurisdiction and should be compelled..........................................................................................................7

        1.    Documents Underlying the Krul Declaration .............................................7

        2.    Plaintiff-Specific Materials ........................................................................8

        3.    Documents Pertaining to the Lead Generation at Issue ...........................12

        4.    Defendants' Applicable Employees Should Sit for a Deposition.............19

IV.   CONCLUSION...................................................................................................21

# TABLE OF AUTHORITIES

**Page(s)**

## Cases

*3DD LLC v. Creative Visions, Inc.*,
   2021 WL 83504 (N.D. Ill. Jan. 11, 2021) ............................................................. 9, 11

*ABN AMRO, Inc. v. Capital Int'l Ltd.*,
   595 F. Supp. 2d 805 (N.D. Ill. 2008) ...................................................................... 13

*Andersen v. Sportmart, Inc.*,
   179 F.R.D. 236 (N.D. Ind. 1998) .............................................................................. 4

*Aranda v. Caribbean Cruise Line, Inc.*,
   179 F. Supp. 3d 817 (N.D. Ill. 2016) ...................................................................... 14

*Bilek v. Nat'l Cong. of Employers, Inc.*,
   470 F. Supp. 3d 857 (N.D. Ill. 2020) .................................................. 7, 8, 13, 17

*Braver v. NorthStar Alarm Servs., LLC*,
   2019 WL 3208651 (W.D. Okla. July 16, 2019) ...................................................... 11

*Cardenas v. Spinnaker Resorts, Inc.*,
   2016 WL 4154921 (D.N.J. Aug. 3, 2016) ................................................................. 6

*Cartwright v. Cooney*,
   788 F. Supp. 2d 744 (N.D. Ill. 2011) ...................................................................... 11

*Clarendon Nat. Ins. Co. v. Medina*,
   645 F.3d 928 (7th Cir. 2011) ................................................................................... 13

*Curry v. Revolution Labs., LLC*,
   949 F.3d 385 (7th Cir. 2020) ..................................................................................... 6

*Gilman Opco LLC v. Lanman Oil Co.*,
   2014 WL 1284499 (N.D. Ill. Mar. 28, 2014) ........................................................... 3

*Grant v. Regal Auto. Grp., Inc.*,
   2020 WL 3250075 (M.D. Fla. Mar. 12, 2020) ........................................................ 17

*Henderson v. United Student Aid Funds, Inc.*,
   918 F.3d 1068 (9th Cir. 2019) ................................................................................. 14

*Johansen v. Liberty Mut. Grp., Inc.*,
   2017 WL 6045419 (D. Mass. Dec. 6, 2017) ............................................................ 11

*Krakauer v. Dish Network, LLC*,
   925 F.3d 643 (4th Cir. 2019) ........................................................................... 15, 16

*Lexington Ins. Co. v. Hotai Ins. Co.*,
   938 F.3d 874 (7th Cir. 2019) ................................................................................. 9

*Lowe v. CVS Pharmacy, Inc.*,
   233 F. Supp. 3d 636 (N.D. Ill. 2017) .................................................................. 13

*Opp v. Wheaton Van Lines, Inc.*,
   231 F.3d 1060 (7th Cir. 2000) ........................................................................ 13, 14

*Oppenheimer Fund, Inc. v. Sanders*,
   437 U.S. 340 (1978) ................................................................................................ 3

*Philos Techs., Inc. v. Philos & D, Inc.*,
   802 F.3d 905 (7th Cir. 2015) .............................................................................. 3, 7

*Purdue Research Foundation v. Sanofi–Synthelabo, S.A.*,
   338 F.3d 773 (7th Cir. 2003) .............................................................................. 11

*Quantum Color Graphics, LLC v. Fan Ass'n Event Photo GmbH*,
   185 F. Supp. 2d 897 (N.D. Ill. 2002) .................................................................... 1

*Rinky Dink, Inc. v. Elec. Merch. Sys.*,
   2015 WL 778065 (W.D. Wash. Feb. 24, 2015) .................................................. 10

*Smith v. Royal Bahamas Cruise Line*,
   2016 WL 232425 (N.D. Ill. Jan. 20, 2016) .......................................................... 4

*Spiegel v. Reynolds*,
   2016 WL 6877625 (N.D. Ill. Nov. 22, 2016) ...................................................... 15

*Toney v. Quality Res., Inc.*,
   75 F. Supp. 3d 727 (N.D. Ill. 2014) ................................................................ 14, 16

*United States v. Dish Network, LLC*,
   954 F.3d 970 (7th Cir. 2020), *cert. dismissed*, 2021 WL 561001 (Jan. 7, 2021) .......... 15, 17, 18

*Zurich Am. Ins. Co. v. Tangiers Int'l LLC*,
   2018 WL 3770085 (N.D. Ill. Aug. 9, 2018) .................................................... 1, 3, 5

## **Statutes**

47 U.S.C. § 227(c)(5) ................................................................................................... 1

## <u>Other Authorities</u>

Rest. (3d) of Agency ...................................................................... 13, 14, 15, 16

## <u>Rules</u>

Fed.R.Civ.P. 26........................................................................................ 12

Fed.R.Civ.P. 34......................................................................................... 6

## <u>Regulations</u>

47 C.F.R. § 64.1200 ............................................................................ 9, 10, 18

The complaint in this action alleges that telemarketing company American Service Insurance Agency LLC ("ASIA") called Plaintiff and others in order to try to sell its corporate affiliate Benefytt Technologies, Inc.'s ("Benefytt") products and services, in violation of the Telephone Consumer Protection Act, 47 U.S.C. § 227(c)(5). Dkt. 1.

Defendants have submitted the declaration of Bryan Krul, contesting the complaint's allegations concerning their involvement in the calls, Dkt. 16-1, and for the proposition that "there is no connection between Defendants' activities in Illinois and the alleged telephone calls made to Plaintiff's phone." Dkt. 16 at 7. Citing the above, Defendants have filed a motion to dismiss contending that that the Court lacks personal jurisdiction. Dkt. 16.

The general rule is that the Court should read a complaint liberally and accept as true the well-pleaded allegations of the complaint and the inferences that may be reasonably drawn from those allegations. *Quantum Color Graphics, LLC v. Fan Ass'n Event Photo GmbH*, 185 F. Supp. 2d 897, 901 (N.D. Ill. 2002) (citing *Sapperstein v. Hager*, 188 F.3d 852, 855 (7th Cir. 1999)). When a defendant submits a declaration that contests the complaint's allegations as part of its jurisdictional challenge – a factual attack – courts "have generally permitted limited discovery." *Zurich Am. Ins. Co. v. Tangiers Int'l LLC*, 2018 WL 3770085, at *2 (N.D. Ill. Aug. 9, 2018).

Because Defendants' motion and declaration raise new factual matters contesting the allegations of the complaint, jurisdictional discovery is appropriate. After substantial meet-and-confer on the issue, and at Defendants' suggestion, Plaintiff issued seven very limited document requests and three deposition notices, to flesh out the parties' factual disagreements relevant to jurisdiction.

Despite that they originally proposed that Plaintiff issue jurisdictional discovery, and despite that they insisted upon issuing *their own* jurisdictional discovery requests, Defendants

now claim they should not have to produce any documents at all, and that they should only have to produce Bryan Krul for deposition, but not the percipient witnesses Sanchez and Laskowski.[1]

Defendants are incorrect: Plaintiff's discovery requests are targeted at obtaining facts relevant to the parties' jurisdictional dispute, and the Court should compel them to respond.

## I.    **BACKGROUND**

Plaintiff filed this action on October 19, 2020, alleging that Defendants violated the TCPA's internal and National Do Not Call Registry rules. Compl. ¶¶ 60, 69-85. Specifically, Plaintiff alleges that Benefytt's subsidiary ASIA called Plaintiff's Illinois number dozens of times to solicit business for Benefytt, despite repeated requests by Plaintiff to stop. Compl. ¶¶ 21-22, 41-43. During one call on October 17, 2018, ASIA employees directly marketed Benefytt and other services to Plaintiff based on a residential address in Illinois. *Id.* ¶¶ 18, 35. Benefytt also emailed Plaintiff application materials *during the call*, to which it had pre-filled in that same Illinois address as the place where services to Plaintiff would be provided. Compl. ¶¶ 32, 34, 36-38; Dkt. 1-1. Benefytt also received Plaintiff's credit card information at the same Illinois address so that Defendants could receive payment for the transaction. Compl. ¶¶ 35, 40.

On December 18, 2020, Defendants moved to dismiss based on the Court's purported lack of personal jurisdiction. Dkt. 16. The motion and its attached declaration raise new factual matter outside the pleadings, some of which directly contradict Plaintiff's allegations that, for example, Defendant ASIA itself placed the calls at issue. *See* Dkt. 16-1, Krul Decl. ¶¶ 5-6. The parties have conferred regarding jurisdictional discovery, and at Defendants' counsel's suggestion, Plaintiff propounded a set of production requests (Ex. A), with a request to depose: (1) Defendants' declarant, Bryan Krul; (2) Karen Sanchez, the ASIA employee who directly

---

[1]    Defendants have indicated that Laskowski no longer works for them but will not provide their best information for her whereabouts, based upon their objection that her testimony would be improper.

solicited Plaintiff during one of the calls at issue; and (3) Precilla Laskowski, the ASIA employee who appeared on correspondence with Plaintiff regarding the transaction (Ex. B). Defendants responded with objections and zero documents on February 5, 2021 (Ex C), and limitations and objections to Plaintiff's depositions requests (Ex. D).[2] As such, Plaintiff respectfully asks for leave to pursue limited discovery on the jurisdictional question prior to filing his response to Defendant's motion to dismiss, as further detailed herein.

## II.     LEGAL STANDARD

 "[W]here issues arise as to jurisdiction or venue, discovery is available to ascertain the facts bearing on such issues," *Oppenheimer Fund, Inc. v. Sanders*, 437 U.S. 340, 351 n. 13 (1978).

The purpose of this exercise, and of an evidentiary hearing if there truly are disputed facts, is to ensure that "both sides have the opportunity to present their cases fully." *Philos Techs., Inc. v. Philos & D, Inc.*, 802 F.3d 905, 912 (7th Cir. 2015). Thus, the "Court has authority 'to require a defendant to respond to discovery requests relevant to his or her motion to dismiss for lack of jurisdiction.'" *Zurich Am. Ins. Co.*, 2018 WL 3770085, at *2 (citations omitted). The Court accepts as true all well-pleaded and unrebutted facts alleged in the complaint, and views them in the light most favorable to Plaintiff. *Purdue Research Foundation v. Sanofi-Synthelabo, S.A.*, 338 F.3d 773, 782-83 (7th Cir. 2003).

## III.    ARGUMENT

"Courts generally will grant jurisdictional discovery if the plaintiff 'can show that the factual record is at least ambiguous or unclear on the jurisdiction issue.'" *Gilman Opco LLC v. Lanman Oil Co.*, 2014 WL 1284499, at *6 (N.D. Ill. Mar. 28, 2014) (noting "low" standard, but

---

[2]     Defendants' responses to Plaintiff's requests and deposition notice attached the requests and notice as exhibits, which Plaintiff omits here to avoid duplicative papers.

that discovery not appropriate if plaintiff raises only "'bare,' 'attenuated,' or 'unsupported' assertions of personal jurisdiction or when … claim appears to be 'clearly frivolous'"). *Andersen v. Sportmart, Inc.*, 179 F.R.D. 236, 241 (N.D. Ind. 1998) ("[A] district court risks abusing its discretion by not allowing some limited discovery into the personal jurisdiction issue.").

Defendants submit the Declaration of Bryan Krul to support their argument that "there is no connection between Defendants' activities in Illinois and the alleged telephone calls made to Plaintiff's phone," or "any of Defendants' forum state activities." Dkt. 16 at 7.

Plaintiff contests these factual assertions. As explained below, jurisdictional discovery aimed at figuring out what really happened is appropriate. Plaintiff's requests are properly tailored to address these allegedly disputed facts, and this motion to compel should be granted.

### A. Plaintiff's allegations are sufficient to warrant the limited jurisdictional discovery requested.

Plaintiff has pleaded a *prima facie* case here sufficient to justify jurisdictional discovery: he alleges that he lives in Illinois, and ASIA called him multiple times in order to try to sell him Benefytt goods and services, even though he was on the National Do Not Call Registry and even though he asked to be placed on their internal Do Not Call list, in violation of the TCPA. Dkt. 1. These facts, if true, would substantiate a cause of action under the TCPA, and would support personal jurisdiction here in Illinois. *Smith v. Royal Bahamas Cruise Line*, 2016 WL 232425, at *2 (N.D. Ill. Jan. 20, 2016).

Defendants, however, have not limited their jurisdictional challenge to the four corners of the Complaint. Instead, they raise new matter, including: (1) whether or not they participated in the calls alleged in the complaint, (2) the extent and scale of their business and presence in Illinois, (3) their use and relation to the calls to Plaintiff and associated telephone numbers used, and (4) the extent to which persons employed by Defendants are located in Illinois. Dkt. 16-1,

4

Krul Decl. ¶¶ 5-10.

Jurisdictional discovery is particularly appropriate in cases like this one where Defendants' factual assertions directly conflict with allegations in the Complaint. *See Zurich Am. Ins. Co.*, 2018 WL 3770085, at *2 ("Courts have generally permitted limited discovery where the motion to dismiss makes a factual challenge to the jurisdictional allegations in the complaint.") (citation omitted). While Plaintiff alleges that "ASIA called [his District-based phone number] dozens of times to solicit business for Benefytt," Compl. ¶¶ 22-23, Defendants' declarant contends that "[t]he telephone calls … were not, and could not have been made by either Benefytt or ASIA[,]" Dkt. 16-1, Krul Decl. ¶ 6. *See also Id.* ¶ 6 (asserting that three phone numbers that called Plaintiff are not "assigned to, or used by, either Benefytt or ASIA to make telephone calls"). Defendants also argue that there is "no connection" between their activities in Illinois and the calls Plaintiff received while he was in Illinois, where he lives.

For example, Sanchez, an operator during at least one of the calls at issue, told Plaintiff she was an insurance agent, and her license references ASIA, and provided ASIA's toll-free number as her callback number. Compl. ¶¶ 29-33. And Benefytt emailed Plaintiff an application for insurance at Sanchez' direction, during one of the calls at issue. *Id.* ¶ 34; Dkt. 1-1 (email).

And although Defendants argue that the Krul Declaration proves that they had "no connection" between them and these calls to an Illinois-based consumer, they do not dispute the complaint's allegations that they "knowingly solicited and sold insurance and other products and services to Plaintiff and other Illinois consumers during the calls at issue[.]" Compl. ¶ 17, and do not dispute the allegations of unsolicited telemarketing, that Defendants actively participated in the calls, or that Defendants tried to sell Plaintiff health insurance products with full knowledge

that he was an Illinois consumer.[3] *Id.* ¶¶ 12, 18-42; Dkt. 1-1; *see Cardenas v. Spinnaker Resorts, Inc.*, 2016 WL 4154921, at *3 (D.N.J. Aug. 3, 2016) (permitting jurisdictional discovery in TCPA action, noting that "[a]lthough the plaintiff bears the burden of demonstrating facts that support personal jurisdiction, courts are to assist the plaintiff by allowing jurisdictional discovery unless the Plaintiff's claim is clearly frivolous").

The Krul declaration and Defendants' arguments do not jibe factually with Plaintiff's experience. Something is fishy here, and the proper way to flesh it out is jurisdictional discovery.

**B.      Defendants' responses are evasive and improper.**

As a threshold issue, Defendants' objections – word-for-word, cut-and-pasted into each response – are evasive and improper. Fed.R.Civ.P. 34(b)(2)(B)-(C) make clear that objections are supposed to directly and fairly address each request, and explain what materials are being withheld, based upon what objections. These responses do not do that.

Not only are the objections facially deficient, Defendants refused to shore them up after meet-and-confer. And during meet-and-confer, defense counsel refused to state – or did not know – whether responsive materials were being withheld based upon objections. Ex. E, Burke Decl. ¶ 4. When Plaintiff's counsel explained that he wanted to confer to try to address the burden component of Defendants' proportionality objections, defense counsel refused to engage substantively, and instead deflected, attacking the *prima facie* case and counsel.  *Id.*[5]

The fact that we're dealing with jurisdictional discovery does not give defendants *carte blanche* to disregard the Federal Rules, or professional candor or decorum. Burden is a necessary

---

[3]      *See Curry v. Revolution Labs., LLC*, 949 F.3d 385, 392-93 (7th Cir. 2020) ("[T]his court will accept as true any facts in the defendants' affidavits that do not conflict with anything in the record, either by way of [the] complaint or other submissions. Where there is a factual conflict between the record and the defendants' affidavits, we will resolve them in [Plaintiff's] favor.").

[5]      Paraphrasing, during the telephonic meet-and-confer, defense counsel repeatedly made comments such as, "I can't help it if you're not capable of crafting appropriate requests." *Id.* n.2.

element of proportionality, which must be substantiated. Defendants have steadfastly refused to do so. Because of this, their objections should be overruled in their entirety.

### C. Plaintiff's requests are relevant to personal jurisdiction and should be compelled.

At Defendants' suggestion, Plaintiff issued targeted requests aimed at fleshing out jurisdictionally-relevant facts. Even if the Krul Declaration is true and means what Defendants argue it means, they may be subject to personal jurisdiction in Illinois, anyway, because personal jurisdiction may rest upon agency theories. *Bilek v. Nat'l Cong. of Employers, Inc.*, 470 F. Supp. 3d 857, 860 (N.D. Ill. 2020). As explained below, the Court should order Defendants to completely respond, so the Court may decide the personal jurisdiction issue based upon a complete record. *Philos Techs*, 802 F.3d at 912.

### 1. Documents Underlying the Krul Declaration

Plaintiff propounded RFP 1 to obtain the documents on which Mr. Krul relied in drafting his declaration:

> **Request for Production No. 1.** Produce all documents, data or other things reviewed by Mr. Krul with regard to his declaration at ECF 16-1.
> **Response:** Documents Mr. Krul may have relied upon in making the statements in his Declaration regarding the telephone numbers associated with the calls alleged in the Complaint will be produced. Defendants also object to this request to the extent it is intended to be broader on the grounds that it thereby seeks information that is not relevant to the personal jurisdiction issue and not proportional to the needs of the case at this juncture.

Although Defendants response states that documents responsive to RFP 1 "will be produced" subject to objections, Defendants failed to do so; even after three unanswered emails for them.

During the parties' telephonic meet-and-confer discussions, one of Defendants' lawyers first explained that there was some sort of "process" that Krull used to verify the facts in his declaration, but another of Defendants' lawyers interrupted his colleague and stated that Mr.

7

Krul **reviewed no documents at all**, and that the other lawyer's reference to a "process" was incorrect.[6] Ex. E, Burke Decl. ¶ 5. Plaintiff finds it implausible that Mr. Krul—a non-employee of ASIA *or* Benefytt—would know off the top of this head which specific phone numbers Defendants used for what, or how much Defendants generated in revenue through Illinois during the first three quarters of 2020 compared to other markets. Dkt. 16-1, Krul Decl. ¶¶ 6, 10. Defense counsel refused to elaborate when pressed as part of the meet-and-confer. To the extent Krul didn't make the information in his declaration up, be must have reviewed *something*—even if it was to simply regurgitate hearsay from employees of Defendants.

Regardless, Defendants chose to interject outside matter into these proceedings to support their jurisdictional motion, and RFP 1's request to discover the documents that helped form the foundation and basis for such assertions is plainly relevant to the Court's jurisdictional determination. Consequently, Plaintiff respectfully asks that the Court compel Defendants to provide a complete response to RFP 1.

### 2. Plaintiff-Specific Materials

In the case of specific personal jurisdiction, "[t]he Court's analysis of its personal jurisdiction over Defendants … is framed exclusively by reference to Plaintiff." *Bilek*, 470 F. Supp. 3d at 860. Documents within Defendants' possession, custody, or control that relate to telemarketing are therefore directly related to personal jurisdiction, and should be produced.

Plaintiff, therefore, issued RFP 2 to obtain any call records relating to Plaintiff's phone number, limited to the time period alleged in the complaint, and RFP 3 to obtain any other data or documents concerning Plaintiff, such as the data Defendants allegedly used in order to

---

[6] The meet-and-confer discussions with defense counsel in this case have been drawn-out and circular, and at times become troublesome and personal. Plaintiff's counsel has asked that the parties' meet-and-confer calls be recorded, to document the parties' exchanges. Defense counsel refused, claiming recordings are unnecessary. Ex. E, Burke Decl. ¶ 6.

generate the quote for insurance contained in the email they sent Plaintiff and attached to the

complaint as Exhibit A:

> **Request for Production No. 2.** Produce all records of telephone calls, including outbound, inbound, transferred calls, to, from or transferred to or from [Plaintiff's phone number], during October 2018 through November 2019.
> **Response:** None for the calls alleged in the Complaint. Defendants also object to the term "transferred" on the grounds that it seeks information that is not relevant to the personal jurisdiction issue and not proportional to the needs of the case at this juncture.
>
> **Request for Production No. 3.** Produce all documents concerning George Moore, [Plaintiff's pseudonym used in the call] Randal Simpson, [Plaintiff's phone number] or [Plaintiff's email address].
> **Response:** Defendants object to this request on the grounds that it seeks information that is not relevant to the personal jurisdiction issue and not proportional to the needs of the case at this juncture.

The personal jurisdiction inquiry requires the Court to consider whether each Defendant

"purposefully availed itself of the privilege of conducting business in the forum state or

purposefully directed its activities at the state," and whether Plaintiff's injury "ar[ose] out of the

defendant's forum-related activities." *3DD LLC v. Creative Visions, Inc.*, 2021 WL 83504, at *2

(N.D. Ill. Jan. 11, 2021) (quoting *Lexington Ins. Co. v. Hotai Ins. Co.*, 938 F.3d 874, 878 (7th

Cir. 2019)).[7] Plaintiff's injury here is illegal telemarketing, and thus Defendants' acts in

facilitating or participating in such calls to Plaintiff in Illinois (RFP 2) are inherently relevant to

the jurisdictional analysis, as is evidence that, through such efforts, Defendants transacted

business or solicited Plaintiff as an Illinois customer for services to be provided to him in this

state (RFP 3).[8] *See* Compl. ¶¶ 12, 17.

---

[7] The third element of the personal jurisdiction inquiry requires the Court to consider whether it "comport[s] with traditional notions of fair play and substantial justice." *Id.*

[8] In other words, it's not just the calls, themselves, that are relevant to the jurisdictional analysis: Defendants' intent and participation in forum-based solicitation to Plaintiff during or that resulted from such calls are *also* relevant to the violations. *See* 47 C.F.R. § 64.1200(f)(13) (defining "telemarketing"—an aspect of Plaintiff's internal do-not-call claims, *see* 47 C.F.R. § 64.1200(d)—as "the initiation of a telephone call or message *for the purpose of encouraging the*

Materials concerning Plaintiff are relevant to personal jurisdiction for several reasons. First, the mere existence of such records refutes Defendants' suggestion in their motion that they have nothing to do with the calling or lead generation at issue. Indeed, during the parties' meet-and-confer discussion about RFP 2, defense counsel refused to say whether they withheld any information based upon their objection to producing documents for "transferred" calls involving Plaintiff. Ex. E, Burke Decl. ¶ 5. This equivocation suggests that ASIA engaged a so-called "common carrier" such as CallFire[9] or other vendor to place the calls, and then had those calls transferred to ASIA who then pitched Benefytt goods and services. A response to these requests will cut through this improper smokescreen.

Second, the materials evidence the fact that Defendants *knew* Plaintiff was an Illinois consumer when they tried to sell him health insurance-related products, goods, and services during the calls at issue. Knowingly trying to sell an Illinois consumer goods and services during the telephone calls at issue would certainly be relevant to whether Defendants "purposely availed" themselves of the laws of Illinois. Indeed, telemarketing is an essential element of a cause of action under both regulations at issue, 47 C.F.R. § 64.1200(c) & (d); non-telemarketing calls are not actionable under these regulations.

Third, Plaintiff-related documents will show the extent to which Defendants intended to provide such goods, products, or services to Plaintiff in the forum state of Illinois. That Defendants knew and intended to transact business in Illinois in connection with the calls to Plaintiff (and others), and knowingly transacted with Illinois-based Plaintiff during the calls,

---

purchase or rental of, or investment in, property, goods, or services*, which is transmitted to any person") (emphasis added); 47 C.F.R. § 64.1200(f)(15) (similar language for "telephone solicitation" definition relevant to Plaintiff's National Do Not Call claims, *see* 47 C.F.R. § 64.1200(c)(2)).

[9]      CallFire is an autodialer vendor, that makes calls and transfers them to its customers. *Rinky Dink, Inc. v. Elec. Merch. Sys.*, 2015 WL 778065, at *5 (W.D. Wash. Feb. 24, 2015).

clearly supports that they purposefully availed themselves of – and directed their lawsuit-related activities at – Illinois. *See 3DD LLC*, 2021 WL 83504, at \*2.

Defendants objections are baseless. Their suggestion that illegal calls that were "transferred" to them cannot confer jurisdiction ignores how third-party telemarketing works: Calls don't just happen in a vacuum; the seller/transferee necessarily has a (typically, contractual) relationship with the telemarketer, by which the telemarketer places calls and either completes the sale itself, or transfers interested call recipients to the seller so that the seller's own employees can attempt to close the sale (so-called "warm transfers").[10] In both instances, but especially the latter, the seller knows the forum consumer's home jurisdiction, both because it sets the geographic region to which it wanted its vendor to telemarket, and also because the call transfer will appear as an *inbound* call from the consumer call recipient's number (in this case, showing Plaintiff's 630, in-District area code) to the seller.

This matters here because Defendants noticeably do not dispute—and thus concede for purposes of their motion to dismiss[11]—that the individuals who solicited Plaintiff during the calls at issue were ASIA employees. Compl. ¶ 29; Dkt. 16-1, Krul Decl. Thus, to the extent ASIA itself did not physically place the calls as Defendants claim, then this necessarily means that the calls were physically placed by someone else – one of Defendants' vendors – and then

---

[10] *See, e.g., Johansen v. Liberty Mut. Grp., Inc.*, 2017 WL 6045419, at \*2 (D. Mass. Dec. 6, 2017) (referencing alleged "Warm Transfer Agreement" pursuant to which "Liberty Mutual retained Precise to transfer calls that met certain criteria to Liberty Mutual and to "collect relevant consumer information, place outbound calls to consumers, prequalify consumers, and transfer interested and qualified consumers to Liberty Mutual"); *Braver v. NorthStar Alarm Servs., LLC*, 2019 WL 3208651, at \*9 (W.D. Okla. July 16, 2019) ("Called parties were ... transferred by Yodel to NorthStar as 'warm transfers' which NorthStar accepted to solicit customers for its security systems[.]").

[11] *See Cartwright v. Cooney*, 788 F. Supp. 2d 744, 750 (N.D. Ill. 2011) ("When a court decides a motion on the basis of paper submissions, a court accepts as true the plaintiff's undisputed allegations, unless proved otherwise by defendant's affidavits or exhibits.") (citing *Purdue Research Foundation v. Sanofi–Synthelabo, S.A.*, 338 F.3d 773, 782 (7th Cir. 2003)).

*transferred* to ASIA in order to make the sale. If so, then whether ASIA asked this vendor to telemarket into or generate leads from Illinois is plainly relevant to whether it availed itself of the state, as is the extent to which Defendants' data reflects its knowledge that Plaintiff was an Illinois consumer who was solicited products or services to be provided to him in Illinois. The requested discovery will flesh this out.

Finally, Defendants' proportionality objection is, likewise, meritless. Plaintiff's counsel asked defense counsel during the parties' meet-and-confer to identify any burden they contend exists in producing materials responsive to Plaintiff's requests. Defense counsel explained that they did not have their clients look for responsive materials and therefore did not know the extent to which responsive materials even existed—if at all. Ex. E, Burke Decl. ¶ 4. As such, Defendants' proportionality objection is made from whole cloth, because they do not know what the "burden" is.[12] Moreover, the suggestion that it is burdensome to come up with information about the named plaintiff – something defense counsel usually receives on the first day or two of representation – is hogwash. Plaintiff has no other relationship with Defendants, and there is no evidence providing what materials Defendants have on him is difficult in any way.

In short, because Defendants actions taken with respect to Plaintiff, as an Illinois-based consumer, are inherently relevant to the Court's ability to exercise personal jurisdiction over Defendants in relation to the violations Plaintiff sued about, RFP 2-3 should be compelled.

### 3. Documents Pertaining to the Lead Generation at Issue

Personal jurisdiction exists over out-of-state defendants that place calls in violation of the TCPA into the forum state. *Lowe v. CVS Pharmacy, Inc.*, 233 F. Supp. 3d 636, 645 (N.D. Ill. 2017) ("Multiple courts have found calls or text messages to a phone number affiliated with a

---

[12]     *See* Fed.R.Civ.P. 26(b)(1) (identifying "whether the burden or expense of the proposed discovery outweighs its likely benefit" as a relevant proportionality consideration).

particular state that violate the TCPA sufficient to satisfy the purposeful direction test for a court of that state to exercise personal jurisdiction over the defendant.") (citing cases). Thus, but for Defendants' assertion of new factual matter that contradicts the complaint, Plaintiff's allegations that ASIA *itself* placed the calls to his phone sufficiently pleads the Court's personal jurisdiction over Defendants.[13] Defendants' inference that some third party must have placed the calls to Plaintiff for them does not in itself rob this Court of jurisdiction, because "the forum-related activities of an agent and a subagent are imputable to the principal and are counted as the principal's contacts for jurisdictional purposes." *ABN AMRO, Inc. v. Capital Int'l Ltd.*, 595 F. Supp. 2d 805, 821 (N.D. Ill. 2008); *Bilek*, 470 F. Supp. 3d at 861-62 (TCPA case).[14]

Generally, an agency relationship arises "when one person (a 'principal') manifests assent to another person (an 'agent') that the agent shall act on the principal's behalf and subject to the principal's control, and the agent manifests assent or otherwise consents so to act." *Clarendon Nat. Ins. Co. v. Medina*, 645 F.3d 928, 935 (7th Cir. 2011) (quoting Rest. (3d) of Agency § 1.01). A principal may be bound on any one of several theories of agency, including (1) actual authority, (2) apparent authority, or (3) ratification. *Bilek*, 470 F. Supp. 3d at 860.

"[A]ctual authority may be express or implied." *Opp v. Wheaton Van Lines, Inc.*, 231 F.3d 1060, 1064 (7th Cir. 2000). "An agent has express authority when the principal explicitly grants the agent the authority to perform a particular act[;]" whereas, "[i]mplied authority is actual authority that is implied by facts and circumstances and it may be proved by circumstantial evidence." *Id.* "Apparent authority is the power held by an agent or other [non-

---

[13]     Here, Plaintiff alleges that ASIA itself placed the calls at issue based, in part, on the fact that ASIA employees directly solicited him, and Benefytt directly emailed him application materials, *during* the calling at issue—a fact Defendants do not dispute. *E.g.,* Compl. ¶¶ 22, 29, 36-37; Dkt. 1-1 (email sent to Plaintiff by Benefytt during the call).
[14]     *See also* 735 ILCS 5/2–209(a) (Illinois long-arm statute authorizing personal jurisdiction over a person for acts done "through an agent").

agent] actor to affect a principal's legal relations with third parties when a third party reasonably believes the actor has authority to act on behalf of the principal and that belief is traceable to the principal's manifestations." Rest. (3d) of Agency § 2.03; *Opp*, 231 F.3d at 1065. "Ratification is the affirmance of a prior act done by another, whereby the act is given effect as if done by an agent acting with actual authority." Rest. (3d) of Agency § 4.01(1). Ratification occurs in the TCPA context when a party that did not place calls knowingly accepts their benefit, *Aranda v. Caribbean Cruise Line, Inc.*, 179 F. Supp. 3d 817, 833 (N.D. Ill. 2016), or continues to accept the benefits despite knowing facts that would have led a reasonable person to investigate further, *Henderson v. United Student Aid Funds, Inc.*, 918 F.3d 1068, 1075 (9th Cir. 2019).

Plaintiff's complaint alleges that, "[t]o the extent a Defendant did not physically 'initiate' the calling at issue itself, it is nonetheless vicariously liable based on theories of actual authority, apparent authority, and ratification, for these calls were made on its behalf[,]" Compl. ¶¶ 75, 85. Thus, to the extent Defendants are correct and ASIA truly didn't *place* the calls – something that remains to be tested – Plaintiff propounded RFP 4-7 to get to the bottom of whether this Court may nonetheless continue to exercise personal jurisdiction over Defendants through principles of agency.

"[T]he existence of an agency relationship is a question of fact, and agency can be created by contract *or by conduct*." *Toney v. Quality Res., Inc.*, 75 F. Supp. 3d 727, 744 (N.D. Ill. 2014) (emphasis added). Plaintiff therefore issued requests aimed at obtaining the contract(s) that operated to cover the telemarketing at issue, as well requests aimed at the parties' conduct surrounding the telemarketing.

> **Request for Production No. 4.** Produce all contracts or agreements with any entity concerned with assisting generation of the business referred to in Exhibit A to the complaint, which were in effect from October 2018 through November 2019.

14

**Response:** Defendants object to this request on the grounds that it seeks information that is not relevant to the personal jurisdiction issue and not proportional to the needs of the case at this juncture.

While the parties' characterizations of their relationship in a contract is not "controlling," Rest. (3d) of Agency §1.02, the rights and duties set forth in a marketing contract are certainly relevant. For example, in *United States v. Dish Network, LLC*, 954 F.3d 970, 975 (7th Cir. 2020), *cert. dismissed*, 2021 WL 561001 (Jan. 7, 2021), the Seventh Circuit found contractual provisions allowing the seller to modify the parties' contract at any time as a prime indicator of whether Dish had the right to control its telemarketers' actions. And in *Krakauer v. Dish Network, LLC*, 925 F.3d 643, 660 (4th Cir. 2019), the Fourth Circuit affirmed a jury's finding of agency, holding the seller vicariously liable for third-party telemarketing performed on its behalf based, in part, on "the many provisions of the contract between Dish and SSN affording Dish broad authority over SSN's business[.]" This principle holds up in the agency-conferring-personal-jurisdiction context, too. For example, *Spiegel v. Reynolds*, 2016 WL 6877625, at \*5 (N.D. Ill. Nov. 22, 2016), found that the "contractual relationship" between the caller and the sham charity on whose behalf the calls were allegedly made "provide[d] sufficient grounds that personal jurisdiction might be proper[.]"

So, too, here are the applicable agreements germane to personal jurisdiction through agency, and whether Defendants' control over each other and the calling at issue supports this Court's exercise of personal jurisdiction. Where Defendants fail to specify any burden in producing one or two contracts—and defense counsel admit to never bothering to even ask their clients to look for them in the first place—such plainly relevant materials should be produced.

The Restatement also specifies that "written or spoken words or other conduct" are relevant to an agency analysis. Rest. (3d) of Agency §1.03. Plaintiff therefore issued RFP 5:

15

**Request for Production No. 5.** Produce all communications with the entity from whom the lead in Exhibit A to the complaint was received, that pertain to telemarketing.

**Response:** Defendants object to this request on the grounds that it seeks information that is not relevant to the personal jurisdiction issue and not proportional to the needs of the case at this juncture.

Once again, Defendants refused to articulate the alleged burden in producing these materials, even when specifically requested during meet-and-confer.

The requested communications are relevant to personal jurisdiction on an agency theory. Communications with the person(s) who generated the lead that was presumably transferred to Defendants are "written … words" that describe "other conduct" related to telemarketing. Rest. (3d) of Agency §1.03. That communications are relevant is not some idiosyncratic hypothetical: In affirming vicarious liability in *Krakauer*, the Fourth Circuit relied upon the course of dealings among the parties – ostensibly demonstrated by emails and other communications – that showed that the defendant knew about the illegal telemarketing, but continued accepting business from it, anyway.  925 F.3d at 660-62 ("contractual terms and pro forma notices ... were no more than 'empty words' that obscured the true relationship between Dish and its retailer").

After all, "the existence of an agency relationship is a question of fact, and agency can be created by contract *or by conduct*." *Toney*, 75 F. Supp. 3d at 744 (emphasis added). In *Toney*, 75 F. Supp. 3d at 744, Judge St. Eve rejected the defendants' argument that language that their agreement "creates no agency, partnership or joint venture relationship" was dispositive of whether agency existed. Instead, the court found that the plaintiff alleged "sufficient facts to show that [seller] in fact exercised a level of control over [caller]'s telemarketing activities to make the existence of an agency relationship plausible." *Id.* Thus, where Defendants here raise new factual matter to contradict Plaintiff's complaint, Plaintiff should be permitted limited discovery into the relevant, telemarketing-related communications that will show the extent of

control they in fact had over the telemarketing at issue.

Indeed, Judge Norgle denied a similar motion to dismiss for purported lack of personal jurisdiction against Defendant Benefytt (then doing business as Health Insurance Innovations, Inc.) in *Bilek*, 470 F. Supp. 3d at 861. There, a third party allegedly called the plaintiff on behalf of Benefytt and certain of its customers. Judge Norgle found the allegations sufficient to support personal jurisdiction "through a chain of agent and subagent relationships based on a theory of implied actual authority[,]" including based on a course of alleged conduct in which Benefytt "provides scripts and pricing information to sales agents, and also advances the cost of sales agents' telemarketing efforts in exchange for a security interest in the sales agent's business."[15]

RFP 5 is aimed at obtaining materials these courts found relevant to agency, in order to prove personal jurisdiction through agency. Plaintiff expects a response to RFP 5 would include, for example, communications that show Defendants drafted or approved marketing scripts, directed the date and time of calls, directed the geographic region for calling (including Illinois), and received consumer complaints about the vendor's telemarketing, which would demonstrate Defendants' knowing retention of the benefit of likely TCPA violations.[16] As in *Bilek*, the course of conduct between Defendants and any vendor they used to call Plaintiff Moore in Illinois is inherently relevant to whether this Court can exercise personal jurisdiction over them, and such telemarketing-related communications responsive to RFP 5 should thus be compelled.

This case alleges that Defendants violated the internal Do Not Call provisions of the TCPA, at 47 C.F.R. § 64.1200(d). Plaintiff issued RFP 6 in order to obtain

---

[15]    *See also, e.g., Dish Network LLC*, 954 F.3d at 977 (Seventh Circuit finding fact that DISH authorized third parties to telemarket on its behalf and knew about their wrongful acts was "enough to make DISH liable as the principal").

[16]    *See Grant v. Regal Auto. Grp., Inc*., 2020 WL 3250075, at *2 (M.D. Fla. Mar. 12, 2020) (compelling production of the defendant's communications concerning the allegedly illegal calls, on the basis that they were relevant to the agency theory of ratification).

Defendants' internal Do Not Call policies.

> **Request for Production No. 6.** Produce all Do Not Call policies that applied to the person who initiated the calls delineated in paragraphs.
>> **Response:** Defendants object to this request on the grounds that it seeks information that is not relevant to the personal jurisdiction issue and not proportional to the needs of the case at this juncture.

As a threshold issue, there is no valid proportionality or relevancy justification for refusing to provide this document, because Defendants are *legally required* to produce their policy "upon demand," under 47 C.F.R. § 64.1200(d)(1). To the extent that either Defendant *has* an internal Do Not Call policy, such policy is likely to demonstrate the day-to-day interactions among the two defendants, and also with their calling vendors. *See Dish Network, LLC*, 954 F.3d at 975 (Seventh Circuit holding that sellers and telemarketers have "to act collectively" to "ensure that it and all of its agents shared a single internal do-not-call list" under the Telemarketing Sales Rule, which is coordinated with the TCPA). This request is limited to the vendor that called Plaintiff Moore, so it is tailored to the jurisdictional issues at bar.

RFP 7 seeks information concerning the telephone number Karen Sanchez – an ASIA employee and insurance agent – provided to Plaintiff during at least one of the telemarketing calls at issue: 855-787-8595. Compl. ¶ 33. During meet and confer discussions, defense counsel asked that Plaintiff revise and narrow this request, which Plaintiff did:

> **Request for Production No. 7.** Produce documents sufficient to describe how 855-787-8595 was used from October 2018 through November 2019.

The Krul Declaration is designed to give the impression that neither Defendant had anything to do with the calls at issue. Defendants' brief even says as much: "there is no connection between Defendants' activities in Illinois and the alleged telephone calls…." Dkt. 16 at 7 (emphasis added). A response to RFP 7 will inform the extent to which these assertions are true. Simply producing minimal materials that tell Plaintiff what the number was used for is not burdensome.

Finally, Plaintiff disagrees with Defendants' proportionality objection to *each* of these requests. When asked by Plaintiff's attorney to identify any burden asserted as to Plaintiff's requests, defense counsel could not and, in fact, couldn't even say whether and what responsive documents existed because they did not have their clients look for them. Because burden is an essential element to a proportionality objection, and because Defendants have steadfastly refused to articulate any burden, instead electing to rest on the relevancy aspect of their objections, the Court should not entertain their proportionality arguments. Even if it were to entertain those arguments, the requested materials are not particularly voluminous or difficult to obtain, and they should be produced. This Court should reject Defendants' effort to interject new factual matter that contradicts Plaintiff's complaint, and then to prevent Plaintiff from investigating their arguments through a modicum of jurisdictionally-relevant discovery.

### 4. Defendants' Applicable Employees Should Sit for a Deposition.

Plaintiff also seeks to depose three key employees of Defendants for jurisdictional purposes: (1) Defendants' declarant, Bryan Krul, *see* Dkt. 16-1; (2) the ASIA employee who completed the transaction with Plaintiff during the call on October 17, 2018, Karen Sanchez, *see* Compl. ¶¶ 28-38; and (3) a former ASIA employee who was copied on email messages Benefytt sent pertaining to Plaintiff's transaction and do-not-call request, *see* Compl. ¶ 42.[17]

Defendants have indicated that they do not object to Bryan Krul's deposition, but they are only willing to produce him to testify "on the limited personal jurisdictional issues raised in his Declaration." Ex. D. Plaintiff agrees that this deposition should be limited to jurisdictional issues, but disagrees that it should be limited to only "issues raised in his Declaration," to the extent Mr. Krul possesses additional information relevant to the jurisdictional inquiry, for

---

[17] As clarified with Defendants during the parties' meet-and-confer discussions, Plaintiff intends to take Rule 30(b)(1) depositions of these individuals; the reference to Rule 30(b)(6) in a portion of the deposition notice was in error.

example whether it is true that "there is no connection between Defendants' activities in Illinois and the alleged telephone calls made to Plaintiff's phone," Dkt. 16 at 7, and to provide testimony concerning any documents produced.

And while Plaintiff agrees that the deposition should be limited to jurisdictional issues, the parties seem to disagree on what a "jurisdictional issue" is: For example, although they were the ones who rebutted the allegations in the complaint, Defendants seem to believe that Plaintiff is not entitled to learn facts that are inconsistent with the complaint. This position is nonsensical and circular: According to Defendants, Plaintiff's complaint is wrong, and although they agreed to engage in jurisdictional discovery, they contend that Plaintiff should not be permitted to learn the jurisdictionally-relevant facts surrounding their side of the story.

Defendants object to producing both Ms. Sanchez and Ms. Laskowski for deposition, because in Defendants' view what they have to say is irrelevant since there "are no allegations that [Sanchez] made any calls," and "no personal jurisdiction allegations" involving Ms. Laskowski. These objections should be overruled. Ms. Sanchez was an employee of ASIA, who made a telemarketing pitch to Plaintiff *during one of the calls that is the subject of this case*. Compl. ¶¶ 28-37. Unlike Mr. Krul, Ms. Sanchez has personal knowledge about the facts and circumstances of Defendants' involvement in that call, because she participated. Plaintiff believes Ms. Sanchez will testify, among other things, that she works for ASIA, taking call transfers like Plaintiff's all day long, that she receives demographic information – including the consumer's state of residence – contemporaneously along with a call transfer, and that her job is to sell health-related goods and services for ASIA and Benefytt to people like Plaintiff, including folks who live in Illinois. This testimony will demonstrate Defendants' purposeful availment of the benefits and burdens of doing business here, with respect to the specific call to Plaintiff.

Laskowski is the person "carbon copied" on customer support emails Benefytt sent to Plaintiff that arose from the illegal telemarketing at issue. *E.g.,* Compl. ¶ 42. Ms. Laskowski is expected to corroborate that both ASIA and Benefytt knew Plaintiff lived in Illinois, and that the purpose of their calls was to try to sell health-related goods and services to him there. Because she was an ASIA employee with a Benefytt email address (plaskowski@hiiquote.com),[18] Laskowski is also expected to be able to testify about the interrelation between ASIA and Benefytt relevant to their own principal-agent relationship as to the telemarketing, as well.

Because both Sanchez and Lakowski were integral to the calls and marketing that is the subject of this case, their first-hand testimony will bear upon the degree to which Krul – who was not present for any of the calls and whose declaration does not purport to be based upon "personal knowledge" – is telling the truth.

Plaintiff's counsel anticipates taking these depositions remotely, and that they will each be two hours or less, given the limitation to jurisdictional issues. Any burden is thus necessarily minimal. Defendants chose to raise outside matter to support their personal jurisdiction motion to dismiss, and Plaintiff should fairly be permitted to conduct limited discovery in order to effectively rebut it. Consequently, the Court should permit these depositions to proceed.

## IV.    **CONCLUSION**

For the foregoing reasons, the Court should: (1) compel Defendants to produce complete, substantive responses to Requests for Production 1-7; (2) permit the depositions of Bryan Krul, Karen Sanchez, and Precilla Laskowski to proceed without further limitation by Defendants; and (3) grant such other and further relief deemed reasonable and just.

---

[18]    Until recently, Benefytt did business as Health Insurance Innovations, Inc. ("HII"). *See* https://benefytt.com/news/hiiq-name-change-to-benefytt-technologies.

Respectfully submitted,

Dated: March 3, 2021

GEORGE MOORE, individually and
on behalf of others similarly situated

By: */s/ Alexander H. Burke*

Alexander H. Burke
Daniel J. Marovitch
BURKE LAW OFFICES, LLC
909 Davis St., Suite 500
Evanston, IL 60201
Telephone: (312) 729-5288
aburke@burkelawllc.com
dmarovitch@burkelawllc.com

*Counsel for Plaintiff*

## FED. R. CIV. P. 37(A)(1)/L.R. 37.2 STATEMENT

The undersigned certifies that Plaintiff, through counsel, has in good faith conferred with

Defendants in an effort to obtain the discovery sought herein without court action, but that such

attempts were unsuccessful, including through a meet-and-confer call that included myself and

co-counsel Dan Marovitch, and Defendants' counsel Tim Hudson, Garry O'Donnell, and Sherine

Marder at approximately 11:00 a.m. CT on January 8, 2021 and 4:30 p.m. CT on February 11,

2021, as well as through multiple emails.

*/s/ Alexander H. Burke*

## CERTIFICATE OF SERVICE

I hereby certify that, on March 3, 2021, I caused the foregoing to be electronically filed

with the Clerk of the United States District Court for the Northern District of Illinois using the

CM/ECF system, which will send notification of such filing to all counsel of record.

*/s/ Alexander H. Burke*

22