IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| GEORGE MOORE, individually and on behalf of others similarly situated,<br>    Plaintiff,<br><br>v.<br><br>AMERICAN SERVICE INSURANCE AGENCY LLC and BENEFYTT TECHNOLOGIES, INC.,<br>    Defendants. | Case No. 1:20-cv-06206<br><br><br><br>Hon. Judge John F. Kness<br>Hon. Mag. Judge Jeffrey Cole |

**PLAINTIFF'S REPLY IN SUPPORT OF**
**<u>MOTION TO COMPEL JURISDICTIONAL DISCOVERY</u>**

## **TABLE OF CONTENTS**

**Page**

A. There is a colorable basis for personal jurisdiction, and related Discovery. ........................1

B. The Court should compel Plaintiff's jurisdictional discovery. ............................................5

    1. Defendants do not claim burden or lodge other objections. ...................................5

    2. Plaintiff's jurisdictional production requests are appropriate. ................................6

    3. The Court should compel the relevant depositions sought. ..................................12

CONCLUSION..............................................................................................................................14

## **TABLE OF AUTHORITIES**

**Page(s)**

### **Cases**

*ABN AMRO, Inc. v. Cap. Int'l Ltd.*,
    595 F. Supp. 2d 805 (N.D. Ill. 2008) .................................................................................. 10

*Bilek v. Nat'l Cong. of Emps., Inc.*,
    470 F. Supp. 3d 857 (N.D. Ill. 2020) ................................................................................ 5, 9

*Birchmeier v. Caribbean Cruise Line, Inc.*,
    2012 WL 7062748 (N.D. Ill. Dec. 31, 2012) ........................................................................ 5

*Central States, Se. & Sw. Areas Pension Fund v. Phencorp Reinsurance Co.*,
    440 F.3d 870 (7th Cir. 2006) ................................................................................................ 3

*Charvat v. Allstate Corp.*,
    29 F. Supp. 3d 1147 (N.D. Ill. 2014) .................................................................................. 11

*Cunningham v. Foresters Fin. Servs., Inc.*,
    300 F. Supp. 3d 1004 (N.D. Ind. 2018) .............................................................................. 11

*Daimler AG v. Bauman*,
    571 U.S. 117 (2014) ............................................................................................................ 10

*Ford Motor Co. v. Montana Eighth Jud. Dist. Ct.*,
    141 S. Ct. 1017 (2021) ................................................................................................ 1, 2, 8

*Gilman Opco LLC v. Lanman Oil Co.*,
    2014 WL 1284499 (N.D. Ill. Mar. 28, 2014) .................................................................... 2, 5

*Hach Co. v. Hakuto Co.*,
    784 F. Supp. 2d 977 (N.D. Ill. 2011) .................................................................................... 1

*Mauer v. Am. Intercontinental Univ., Inc.*,
    2016 WL 4651395 (N.D. Ill. Sept. 7, 2016) ....................................................................... 11

*Nicks v. Koch Meat Co.*,
    2016 WL 6277489 (N.D. Ill. Oct. 27, 2016) ........................................................................ 5

*Precision Dynamics Corp. v. Typenex Med., L.L.C.*,
    2014 WL 12656904 (E.D. Wis. Feb. 13, 2014) .................................................................. 12

*Snyder v. U.S. Bank N.A.*,
    387 F. Supp. 3d 867 (N.D. Ill. 2019) .................................................................................. 11

*Trading Techs. Inter., Inc. v. BCG Partners, Inc.*,
  2011 WL 1220013 (N.D. Ill. Mar. 28, 2011) ............................................................................... 1

*World-Wide Volkswagen Corp. v. Woodson*,
  444 U.S. 286 (1980) .................................................................................................................. 2

## **Other Authorities**

*In re TCPA*,
  28 FCC Rcd. 6574 (2013) ......................................................................................................... 5

## **Rules**

Fed.R.Civ.P. 26(b)(1) ................................................................................................................... 10

Fed.R.Civ.P. 30(b)(1) ................................................................................................................... 13

Fed.R.Civ.P. 34(b)(2)(C) ................................................................................................................ 6

Fed.R.Civ.P. 56(c)(4) ..................................................................................................................... 6

Specific personal jurisdiction attaches where a defendant "purposefully avails" itself of the privilege of conducting business within the forum state. *Ford Motor Co. v. Montana Eighth Jud. Dist. Ct.*, 141 S. Ct. 1017, 1024-25 (2021).[1] A defendant may do this by deliberately reaching out beyond its home and "exploiting a market in the forum state or entering into a contractual relationship centered there." *Id*. Specific jurisdiction is thus proper if the plaintiff's claims "arise out of or relate to the defendant's contacts with the forum." *Id*.

*Montana Eighth* – decided about a week before Defendants' opposition brief was filed – focuses on the "relates to" analysis, which is the broader of the two. Defendants' personal jurisdiction position focuses on the "causation approach," only, which asks whether the lawsuit's claims "arise out of" a defendant's forum-related activities, and ignores "relates to" completely.

As explained below, this lawsuit both "arises from" *and* "relates to" each Defendant's Illinois-based conduct, and Plaintiff's jurisdictional discovery aims to demonstrate this. For this reason, the Court should compel Defendants to respond to Plaintiff's jurisdictional discovery, so that the case can progress.

    **A.**     **There is a colorable basis for personal jurisdiction, and related Discovery.**

To obtain jurisdictional discovery, a plaintiff must generally establish a colorable or *prima facie* showing of personal jurisdiction. *Hach Co. v. Hakuto Co.*, 784 F. Supp. 2d 977, 981 (N.D. Ill. 2011). Generally, jurisdictional discovery is justified if the plaintiff can show that the record is "ambiguous or unclear on the jurisdictional issue." *Trading Techs. Inter., Inc. v. BCG Partners, Inc.*, 2011 WL 1220013, at *3 (N.D. Ill. Mar. 28, 2011). This is a "low" standard: jurisdictional discovery will only be denied if Plaintiff's assertions of personal jurisdiction are bare, attenuated, unsupported, or frivolous. *Gilman Opco LLC v. Lanman Oil Co.*, 2014 WL

---

[1]     For ease of reading, most of the quotations to *Montana Eighth* herein omit internal punctuation such as quotation marks and brackets.

1284499, at *6 (N.D. Ill. Mar. 28, 2014).

Plaintiff can demonstrate a *prima facie* case for specific jurisdiction. The complaint alleges that Defendants knowingly telemarketed to Plaintiff and other Illinois consumers for the purpose of generating business in this State. Compl. ¶¶ 12, 17. Plaintiff's improper telemarketing claims directly relate to (and, indeed, arise out of) such forum contacts. *Id.* ¶¶ 18-47. Plaintiff alleges that the subject telemarketing occurred on a large-scale, class basis, *Id.* ¶¶ 17, 60; as such, exercise of jurisdiction is reasonable because Defendants should have reasonably anticipated being haled into court here, Illinois has a strong interest in protecting the privacy rights of its citizens, and the judicial economy of resolution in this single forum benefits all parties and justice overall.[2]

Moreover, the declaration of Bryan Krul, submitted by Defendants, corroborates this by admitting that Defendants made $4.2 million through Illinois transactions in 2020. Dkt. 16-1 ¶ 10. And while Krul also says that this represents only 2.5% of revenues for that period, *Montana Eighth* focuses on the systematic quality of the party's contacts rather than the percentage of contacts as compared with other forums. For example, Justice Kavanaugh analyzed *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 297 (1980), and noted "if Audi and Volkswagen's business deliberately extended into Oklahoma (among other States), then Oklahoma's courts could hold the companies accountable for a car's catching fire there—even though the vehicle had been designed and made overseas and sold in New York." 141 S. Ct. at 1027.

Here, Defendants admit that their business generates millions of dollars of revenue from the forum state. Dkt. 16-1 ¶ 10. Moreover, the Complaint makes clear that Defendants exercised

---

[2]  Exercising personal jurisdiction over Defendants does not impose an undue burden. In fact, Benefytt f/k/a Health Insurance Innovations is already litigating another class action here based on similar TCPA claims, *Bilek v. Nat'l Cong. of Employers, Inc.*, No. 1:18-cv-03083 (N.D. Ill.). Plaintiff has a strong interest in pursuing redress in the forum in which he lives and where he incurred the violations at issue.

2

an *informed choice* as to whether to offer goods and services to Illinois-based Plaintiff, because they knew his state of residence when they accepted the telemarketing call, when they took down his credit card information, and when they sent the email attached to the Complaint as Exhibit A. Compl. ¶¶ 12, 17, 22-23, 35; Dkt. 1-1 at 3. As such, Plaintiff has made a "colorable or *prima facie*" showing sufficient for jurisdictional discovery.

Defendants' suggestion that the Court draw inferences in their favor runs contrary to law. In *Central States, Se. & Sw. Areas Pension Fund v. Phencorp Reinsurance Co.*, 440 F.3d 870, 878 (7th Cir. 2006), for example, the Court reversed a decision granting dismissal for lack of personal jurisdiction, and remanded to permit jurisdictional discovery. In doing so, the Court found that a declaration the defendant submitted failed to fully refute the plaintiff's jurisdictional allegations: It claimed that the defendant was not "currently 'doing any business'" in the United States, but "d[id] not say specifically that it is not attempting to do so or does not send agents to the United States." *Id.* The Court found the plaintiff's submission of other indicia of jurisdiction sufficient to establish a *prima facie* case for personal jurisdiction. *Id.*

Just as the plaintiff in *Central States* was "entitled to the resolution in its favor of all disputes concerning relevant facts presented in the record," *id.*, so, too, should Plaintiff Moore be here. *See also Id.* (court must "read the complaint liberally, in its entirety, and with every inference drawn in favor" of plaintiff). Yes, the Krul declaration asserts that Defendants didn't *themselves* call Plaintiff. Dkt. 16-1, Krul Decl. ¶¶ 5-6. But, like in *Central States*, it is just as important what the Krul declaration *doesn't* say: The Krul declaration does not refute Plaintiff's alternative allegations that Defendants used a third party to place the calls for them to Plaintiff and other Illinois consumers. Compl. ¶¶ 11, 17, 45, 60-61, 75, 79, 85. The Krul declaration does not refute Plaintiff's allegations that he is an Illinois resident with an Illinois area code, or that

3

each Defendant participated ***directly*** in the telemarketing to him and other Illinois consumers by ASIA employees providing a quote to make sales *during the calling*, Benefytt emailing application materials *during the calling*, and them ultimately generating business as a result—for products to necessarily be provided to those consumers in this State. Compl. ¶¶ 12, 17-18, 29-38, 47, 50, Ex. A (copy of application Benefytt emailed to Moore during call, with redacted IL demographic info). And the Krul declaration does not dispute that Defendants do business in Illinois to which this telemarketing at issue relates: In fact, the declaration *admits* Defendants have conducted extensive, systematic business here—generating $4.2 million in business attributable to Illinois in the first three quarters of 2020, alone. Dkt. 16-1, Krul Decl. ¶ 10.

Thus, whether Defendants physically dialed Plaintiff's phone number or hired a vendor to do so and then transfer the call to them in order to complete the sale doesn't change the fact that they purposefully availed themselves of the Illinois market.[3] The uncontested facts are that Plaintiff's injury arose out of Defendants' purposeful, forum-based activities in conducting telemarketing-based lead generation into Illinois on a wide-scale, class basis, Compl. ¶¶ 17, 51-55, 60. Under *Montana Eighth*, Defendants' admitted, intentional efforts to exploit the Illinois market—efforts of which the telemarketing violations here relate and, indeed, arose from—fairly permit this Court to exercise jurisdiction over them. At the very least, Plaintiff presents a "colorable" showing of personal jurisdiction sufficient to permit jurisdictional discovery.

Because personal jurisdiction may exist even if Defendants' assertion that they didn't physically place the calls is true—as, for example, Judge Norgle found under similar circumstances in *Bilek v. Nat'l Cong. of Emps., Inc.*, 470 F. Supp. 3d 857, 861-62 (N.D. Ill.

---

[3] *See also Draper, Inc. v. Mechoshade Sys., Inc.*, 2011 WL 1258140, at *2 (S.D. Ind. Mar. 31, 2011) ("[T]he presence of a [] 'middleman' does not insulate [a defendant] from its having purposefully availed itself of the forum state by generating millions of dollars worth of commercial activity in [the forum] through its sales efforts.") (citation omitted).

2020)—this is exactly the kind of "ambiguous or unclear" factual record for which the low standard for jurisdictional discovery makes appropriate.[4] *Gilman Opco LLC*, 2014 WL 1284499, at *7 (citation omitted); *Nicks v. Koch Meat Co.*, 2016 WL 6277489, at *5 (N.D. Ill. Oct. 27, 2016) (finding that ambiguity over "Defendants' internal structure" and "the 'control' exerted by [defendant] over the chicken catching and/or caging business" at issue warranted jurisdictional discovery) (St. Eve, J.).

### B. The Court should compel Plaintiff's jurisdictional discovery.

Plaintiff's requests and noticed depositions are appropriate and narrowly tailored to the jurisdictional issues Defendants themselves raise. Plaintiff's unrebutted allegations are that Defendants knew about, participated in, and benefitted from the calls at issue to himself and other Illinois consumers. Compl. ¶¶ 12, 17, 29, 40, Ex. A. But to the extent the Court may consider the additional factual matter Defendants assert in the Krul declaration or the motion to dismiss, Plaintiff should be afforded a fair opportunity to test and rebut it in advance of briefing.

#### 1. Defendants do not claim burden or lodge other objections.

It is important to note that relevancy is Defendants' only objection to providing responses to these discovery requests. *See* Dkt. 19-3. Defendants do not claim that providing wholesome responses would be burdensome at all. And while their responses do baldly mention proportionality, defense counsel would not articulate what they meant as to this objection other than to say that the requests were not relevant. Moreover, Defendants refused to revise the

---

[4] *See also Birchmeier v. Caribbean Cruise Line, Inc.*, 2012 WL 7062748, at *1 (N.D. Ill. Dec. 31, 2012) ("The Court [] rejects defendants' contention that liability attaches under the TCPA only to the party that actually placed the call. To offer an example, suppose that A, a well-heeled entity that wants to sell a product or service, stands next to B, an impecunious defendant, and directs B to place unsolicited, prerecorded calls to consumers on their cell phones. Defendants' position, it appears, is that only B, the impecunious dialer, would be liable and that A would get off scot-free. A Congressional enactment that permitted this would be absurd indeed. Fortunately that is not the law under the TCPA.") (citing cases); *see also In re TCPA*, 28 FCC Rcd. 6574, 6582 ¶ 24 (2013) (affirming vicarious liability under TCPA).

responses to comport with Fed.R.Civ.P. 34(b)(2)(C), and during the parties' meet-and-confer telephone calls would not articulate any alleged burden or disclose what – if anything – they were withholding based upon objection.

## 2. Plaintiff's jurisdictional production requests are appropriate.

Defendants' opposition to production fails to overcome the relevance of Plaintiff's limited discovery requests to the Court's jurisdictional determination:

**RFP 1** asks for documents, data or other things that Mr. Krul reviewed, with regard to the declaration submitted at Dkt. 16-1. The relevance of this request to personal jurisdiction is easy to see, because Defendants submitted the Krul declaration in support of their position as to personal jurisdiction.

Defendants' response brief doubles-down on their representation that Mr. Krul did not review any documents with regard to his declaration. Dkt. 25, Def.'s Resp. at 11. However, they fail to address any of the issues Plaintiff raises in his motion, including the fact that one of Defendants' attorneys abruptly cut off his colleague's explanation about Mr. Krul's "process" to refuse to provide *any* information or supplementation, whatsoever. Defendants' response brief also fails to address defense counsel's refusal to elaborate on how Mr. Krul—a non-employee of either Defendant—could somehow know which phone numbers Defendants did or did not use and for what, or how much in revenue they generated through Illinois during the first three quarters of 2020 compared to other markets.

Declarations must be made based upon personal knowledge, set out facts that would be admissible in evidence, and show that the affiant or declarant is competent to testify. *E.g.,* Fed.R.Civ.P. 56(c)(4). Plaintiff is incredulous as to whether Krul truly had personal knowledge of – for example – the Defendants' combined revenues for Illinois in the first three quarters of

6

2020, or what caller IDs Defendants used to make outbound calls, particularly given defense counsel's aborted explanation during meet-and-confer. The Court should order the materials, if any, to be produced.

**RFP 2** asks for records of phone calls to or from Plaintiff's phone number, including calls that were "transferred" into ASIA's phone system. Defendants say they have no inbound or outbound call data but specifically refuse to produce any call *transfer* data. Defendants do not deny that they participated in the calls, so the calls must have been transferred. Defendants are wrong that "transferred" calls are irrelevant to jurisdictional discovery.[5]

*Montana Eighth* makes clear that from a personal jurisdiction perspective, there is no difference between Defendants directly placing calls to market to Illinois consumers in the forum on the one hand, and having a third-party place calls that are then transferred to ASIA to market to Illinois consumers on the other. The end result is the same: Defendants do not deny that they exploited the Illinois market by participating in telemarketing to Plaintiff and other Illinois consumers for the purpose of generating sales of products to this State's citizens.

The requested Plaintiff-specific transfer data will show ASIA's willful receipt of a sales call involving Plaintiff's phone number with an Illinois-based, 630 area code, which directly evidences Defendants' forum-related activities in trying to market to this Illinois plaintiff. It will also show the time and duration of Defendants' forum-based telemarketing efforts, with a timestamp Plaintiff expects will match up with the quote Benefytt emailed to him towards the

---

[5]   Defendants' argument that "[s]uch a basis for personal jurisdiction is not pled in Plaintiff's Complaint" misreads Plaintiff's allegations that Defendants "made ***or caused to be made*** the calls that are the subject of this lawsuit to Plaintiff and others in this District[.]" Compl. ¶ 17 (emphasis added); *see also* Compl. ¶¶ 75, 85 ("To the extent a Defendant did not physically 'initiate' the calling at issue itself, it is nonetheless vicariously liable based on theories of actual authority, apparent authority, and ratification, for these calls were made on its behalf."); ¶¶ 47-57 (alleging facts concerning Defendants' knowledge and participation in the calling at issue, apparent authority for the calls, and knowing retention of benefits for the calling).

7

end of the call. Dkt. 1-1, Compl. Ex. A. Defendants' call records pertaining to Plaintiff make it extremely difficult for Defendants to deny that Plaintiff's alleged injuries didn't arise from or relate to their purposeful availment of Illinois, since it should be right there in the data.

*Montana Eighth* confirmed that a defendant's forum-related activities are relevant to specific personal jurisdiction irrespective of direct causal connection to the plaintiff's particular injuries, 141 S. Ct. at 1026, and thus <u>all</u> of Defendants' Illinois-based telemarketing transfer data as to Plaintiff and other consumers is relevant, not just Plaintiff's. Where Plaintiff here only seeks the data for *himself* as opposed to the entire class, this presents a very reasonable limitation on the full scope of relevant jurisdictional discovery. As such, the Court should compel these basic call records.

**RFP 3** asks for the documents Defendants have that relate to the named plaintiff. These materials are relevant to personal jurisdiction, because the records will show that Defendants knew that Plaintiff resides in Illinois, and that they intentionally marketed to him and tried to sell him insurance policies during the subject calls in spite of this.

Defendants' objection argues that these materials are irrelevant because "determining whether personal jurisdiction exists requires defendant-specific analysis." Plaintiff does not disagree. That is why this request asks for documents in *Defendants'* possession, custody, or control concerning Plaintiff. Defendants' records are expected to corroborate that they participated in the calls at issue and tried to sell Plaintiff healthcare-related goods and services, knowing full-well that Plaintiff lives in Illinois. If this is the case, it will show that they purposefully availed themselves of the privilege of doing business here, that the telemarketing violations at issue arise from or relate to their Illinois activities, and that it would be reasonable for them to have to defend the case here.

Defendants do not deny Plaintiff's allegations that he has no relationship with them at all, outside of the calling at issue; in fact, the class, too, is limited to non-customers. Compl. ¶¶ 21, 39, 60. Nor do they deny Plaintiff's allegations that he is an Illinois consumer whom they directly solicited during phone calls to his Illinois-based phone number, for insurance and other products and services to be provided to him in this State. Compl. ¶¶ 12, 17. Ergo, because Plaintiff has no prior relationship with Defendants, and because the sole contact between the parties was in connection with their solicitation to Plaintiff into the State of Illinois, whatever materials Defendants have concerning Plaintiff is necessarily probative of their forum-directed marketing activities and this Court's jurisdiction. *See Bilek*, 470 F. Supp. 3d at 860 (finding, in similar TCPA class action, that "[t]he Court's analysis of its personal jurisdiction over Defendants … is framed exclusively by reference to Plaintiff").

Because the scope of the parties' relationship is so limited, there can be only limited responsive materials—though whatever they have will be highly relevant to evidencing their purposeful availment of the forum vis-à-vis Plaintiff. Indeed, it is germane, if not determinative, of personal jurisdiction that Defendants' customer relationship management (CRM) data reflects their knowledge that Plaintiff had an Illinois address and phone number, or that the products Defendants quoted were to be provided to him in this State. This is a basic request that should be compelled.

**RFP 4 and 5** ask for contracts or agreements and telemarketing-related communications with the entit(ies) that called Plaintiff. Plaintiff issued these requests because the Krul Declaration indicates that the calls were made by some person other than ASIA, and Defendants have not denied that such calls were transferred to them, after which Defendants tried to sell Plaintiff Moore healthcare-related goods and services.

9

These materials are thus inherently germane to Defendants' involvement in the calls to Plaintiff and other Illinois consumers. It is not likely that the telemarketing calls alleged in the complaint were serendipitously transferred to ASIA, especially where employees of ASIA were prepared and ready to solicit to Plaintiff when connected. Compl. ¶¶ 25-38. There *must* have been some relationship or agreement between Defendants and the entity that called Plaintiff. These requests—which seek information on the relationship and level of control Defendants had over that vendor—are thus directly relevant to this Court's ability to exercise personal jurisdiction through agency.[6] Indeed, Defendants' response brief *concedes* that an agency relationship, which these requests are intended to show, "may be relevant to the question of specific jurisdiction[.]" Dkt. 25, Def.'s Resp. at 13. Further, neither Defendants' objections nor their response brief articulate to any degree of specificity that production of such would be unduly burdensome. These requests should, therefore, be compelled.

Defendants' argument that Plaintiff should be denied this admittedly relevant discovery because he didn't "allege the existence of a third-party agency relationship," *id.*, fails for two reasons: First, once the Court finds the complaint's claims to be colorable, the proper scope of discovery is not limited to some hyper-restrictive, line-by-line verification of whether specific allegations of a complaint are true or false, but to "any nonprivileged matter that is relevant to any party's claim or defense[.]" Fed.R.Civ.P. 26(b)(1). Plaintiff has alleged this Court's personal jurisdiction based on Defendants' willful participation in calling and knowing solicitation (and sales) into Illinois as to Plaintiff and other consumers, Compl. ¶ 17, and whether that participation involved physically placing the calls or directing and participating in them after-

---

[6] *See ABN AMRO, Inc. v. Cap. Int'l Ltd.*, 595 F. Supp. 2d 805, 821 & 830 (N.D. Ill. 2008) ("[T]he forum-related activities of an agent and a subagent are imputable to the principal and are counted as the principal's contacts for jurisdictional purposes[;] … evidence of control is enough to make out a *prima facie* case of agency[.]"); *Daimler AG v. Bauman*, 571 U.S. 117, 135 n. 13 (2014) ("Agency relationships, we have recognized, may be relevant to the existence of *specific* jurisdiction.").

10

the-fact is relevant to understanding the nature and scope of Defendants' forum-based activities. Where Defendants' here seek to contest Plaintiff's allegations about their participation in the calls through submission of a declaration outside the four corners of his complaint, it is only fair that Plaintiff be afforded an opportunity to test and rebut those assertions.

Second, Defendants' reading of the complaint is simply wrong: While Plaintiff certainly alleged that Defendant ASIA itself called him (a reasonable allegation, seeing as Defendants themselves do not dispute that he spoke with ASIA employees when called, Compl. ¶ 29), his complaint *also* repeatedly alleges that Defendants are liable to the extent they had some third party place the calls on their behalf.[7] *See* Compl. ¶¶ 11, 17, 45, 60-61, 75, 79, 85.[8] Thus, even under Defendants' self-imposed limitations on the discovery rules as requiring Plaintiff to specifically allege that a third-party made the calls, this discovery is appropriate.

Courts do not expect a TCPA plaintiff to plead facts as to agency reasonably known only by the defendant at the pleading stage. *See Charvat v. Allstate Corp.*, 29 F. Supp. 3d 1147, 1151 (N.D. Ill. 2014) (rejecting defense arguments about sufficiency of TCPA plaintiff's agency allegations as to its relationship with call vendor, since "it is defendants, not plaintiff, who can reasonably be expected to know these facts").[9] But where the defendant, as here, seeks to wield its special knowledge as a weapon to defeat the complaint at the pleading stage, that information must in fairness be open for at least some limited discovery—especially here, where the artful

---

[7] Based on Defendants' bizarre resistance to providing call transfer data as to Plaintiff Moore, Defendants apparently believe one of their third-party vendors physically placed the lead generation call to Plaintiff, and then transferred it to an ASIA sales employee after Plaintiff answered. If Defendants want to interject these additional facts into the proceedings at the pleading stage, then the Court should, in fairness, allow the parties an even playing field by permitting the limited discovery Plaintiff seeks.

[8] *See, e.g.,* Compl. ¶¶ 75, 85 ("To the extent a Defendant did not physically 'initiate' the calling at issue itself, it is nonetheless vicariously liable based on theories of actual authority, apparent authority, and ratification, for these calls were made on its behalf.").

[9] *Accord Mauer v. Am. Intercontinental Univ., Inc.*, 2016 WL 4651395, at *2 (N.D. Ill. Sept. 7, 2016); *Snyder v. U.S. Bank N.A.*, 387 F. Supp. 3d 867, 872 (N.D. Ill. 2019); *Cunningham v. Foresters Fin. Servs., Inc.*, 300 F. Supp. 3d 1004, 1016 (N.D. Ind. 2018).

wording of the Krul declaration doesn't actually deny Defendants' involvement in the telemarketing at issue, and even affirmatively admits to generating millions of dollars of business attributable to Illinois. *E.g., Precision Dynamics Corp. v. Typenex Med., L.L.C.*, 2014 WL 12656904, at *3 (E.D. Wis. Feb. 13, 2014) (granting jurisdictional discovery where, inter alia, "[defendant's declaration] does not deny that it sold products to Wisconsin residents or that it marketed and/or gave samples of the accused product to Wisconsin residents").

If the Court here intends to consider Defendants' contention that a third party other than ASIA called Plaintiff, then knowing who that third party is and the extent to which Defendants controlled its calls to Plaintiff and other consumers in Illinois is inherently relevant to this Court's decision as to personal jurisdiction. Plaintiff respectfully asks that the Court reject Defendants' request that it make this important decision on a one-sided, conclusory record. This admittedly relevant discovery is important to the Court's inquiry and should be compelled.

**RFP 7.** As explained in his motion, in the course of the parties' meet-and-confer discussions, Plaintiff agreed to limit the scope of RFP 7 to only "documents sufficient to describe how 855-787-8595 was used from October 2018 through November 2019." Dkt. 19, Pl.'s Mot. at 18-19. Defendants' response brief ignores this agreed-upon reframing, and the parties' discussions, and instead makes arguments based on the original, no-longer-relevant wording of RFP 7. 855-787-8595 is the phone number ASIA employee Sanchez provided to Plaintiff during one of the calls at issue. Compl. ¶ 33. It is not hard for Defendants to simply produce documents that show how this number was used during the relevant time period; certainly, there is no burden articulated, despite that Plaintiff's counsel asked for this point-blank.

### 3. The Court should compel the relevant depositions sought.

Defendants' response brief: (1) ignores Plaintiff's confirmation during the parties' meet-

and-confer discussions and in his motion that the depositions he seeks are brought under Fed.R.Civ.P. 30(b)(1), such that no "matters for examination" were required in Plaintiff's notice; and (2) falsely suggests that Plaintiff won't limit the scope of the depositions to jurisdictional issues, when this has already been repeatedly confirmed such during the parties' discussions and in Plaintiff's motion, itself.[10] *See* Dkt. 19, Pl.'s Mot. at 20.

Rather than limit their jurisdictional arguments to the four corners of Plaintiff's complaint, Defendants *chose* to interject the declaration of Bryan Krul, a non-employee, to raise dubious new factual assertions to rebut Plaintiff's complaint's allegations. Dkt. 16-1. Plaintiff thereafter sought to depose Mr. Krul, as well as the two ASIA employees with whom Plaintiff, as a prospective Illinois-based customer, had actual, direct contact with respect to the calling at issue: Karen Sanchez (who directly solicited him during one of the calls) and Precilla Laskowski (who appeared on multiple emails concerning the transaction with Plaintiff). Defendants objected only as to the Karen Sanchez and Precilla Laskowski depositions, but confirmed that "a deposition of Mr. Krul to the limited personal jurisdictional issues raised in his Declaration" was "relevant to the personal jurisdiction issue or proportional to the needs of the case at this juncture." Dkt. 19-4 at 3. Thus, at the very least, this Court should uphold Defendants' original position that Plaintiff's deposition of Mr. Krul is relevant, proportional, and appropriate.

The requested deposition testimony will elicit information that written discovery requests cannot; that's the whole purpose of depositions. The information Mr. Krul has is plainly relevant, since he is the individual whose declaration Defendants submitted in support of their motion to dismiss. The two ASIA employees, Karen Sanchez and Precilla Laskowski, are important depositions because of the necessary limitations of knowledge Mr. Krul, as a non-employee of

---

[10] Of course, as the scope of these depositions are limited to jurisdictional issues, Plaintiff reserves the right to re-depose these individuals on other issues to the extent it becomes necessary or probative.

13

Defendants, has regarding Defendants' Illinois-based marketing efforts. Ms. Sanchez was the ASIA employee who directly spoke to Plaintiff during one of the calls at issue, and who took down his Illinois address and phone number and gave him a quote for insurance based on his Illinois location. She will necessarily be able to testify much more specifically as to Defendants' forum-based activities than Mr. Krul, a non-employee who does not profess to have participated in *any* of Defendants' forum-based marketing activities, and whom defense counsel admitted during meet-and-confer discussions didn't review *anything* before signing the declaration they apparently prepared for him. Likewise, Ms. Laskowski, as the apparent primary contact for Defendants with respect to Plaintiff, is likewise expected to have probative, direct knowledge about the extent of Defendants' forum-related activities as to Plaintiff and other Illinois consumers.

Defendants' suggestion that some additional written discovery alone should be sufficient for Plaintiff's purposes is rich, given that (1) they produced no documents at all, and (2) during the parties' discussions, defense counsel made clear that the only way Plaintiff was going to get further information as to Krul was through a deposition. *See, e.g.,* Dkt. 19-5, Burke Decl. ¶ 6 (discussing unnecessarily personal and difficult meet-and-confer). Why on Earth should Plaintiff or the Court think further written requests would go differently? The Court should grant the depositions requested, limited in scope to matters relevant to personal jurisdiction.

## CONCLUSION

For the foregoing reasons and as stated in Plaintiff's motion, the Court should: (1) compel Defendants to produce complete, substantive responses to RFP 1-5 and 7; (2) permit the depositions of Bryan Krul, Karen Sanchez, and Precilla Laskowski to proceed without further limitation by Defendants; and (3) grant such other and further relief deemed reasonable and just.

                                                                                             Respectfully submitted,

Dated: April 20, 2021                            GEORGE MOORE, individually and
                                                                                  on behalf of others similarly situated

                                                                                    By:  */s/ Alexander H. Burke*

Alexander H. Burke
Daniel J. Marovitch
BURKE LAW OFFICES, LLC
909 Davis St., Suite 500
Evanston, IL 60201
Telephone: (312) 729-5288
aburke@burkelawllc.com
dmarovitch@burkelawllc.com

*Counsel for Plaintiff*

## CERTIFICATE OF SERVICE

      I hereby certify that, on April 20, 2021, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to all counsel of record.

                                                                                                                      */s/ Alexander H. Burke*