**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | | |
|---|---|---|
| GEORGE MOORE, individually and on behalf of others similarly situated, | ) ) | Case No. 1:20-cv-06206 |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| AMERICAN SERVICE INSURANCE | ) | Hon. Judge John F. Kness |
| AGENCY LLC and BENEFYTT | ) | Hon. Mag. Judge Jeffrey Cole |
| TECHNOLOGIES, INC., | ) | |
| Defendants. | ) | |

**OPPOSED**
**PLAINTIFF'S MOTION FOR LEAVE TO AMEND COMPLAINT**

Plaintiff lives in Illinois, and has received dozens of nonconsensual telemarketing calls from caller ID 334-619-5367 in about 2018 and thereafter. On October 17, 2018 – about the eighth such call – Plaintiff indicated an interest in buying some of the health insurance and related goods and services these calls were trying to sell. Although the initial telemarketer on the call failed to meaningfully identify themselves in violation of 47 C.F.R. § 64.1200(d)(4), Plaintiff was transferred to an Illinois-licensed insurance agent who identified herself as Karen Sanchez. Although Ms. Sanchez did not identify ASIA as her employer on the call, her insurance license confirms this. After Ms. Sanchez took Plaintiff's information, she loaded it into Benefytt's online quote platform, and Benefytt emailed Plaintiff a quote for insurance. Dkt. 1-1.

Since it was an ASIA employee who solicited him during the call, Plaintiff originally believed that the calls were initiated by ASIA itself, and alleged as much in the complaint. However, Defendants filed a motion to dismiss for want of personal jurisdiction, attaching a declaration that denies this. And although the existing complaint contains allegations sufficient to support personal jurisdiction and Defendants' vicarious liability, Plaintiff believes it most

appropriate to amend in order to better focus the complaint's allegations.

The proposed amended complaint also adds allegations about how Defendants' Illinois-related business contacts "relate to" the alleged violations. In March, the Supreme Court issued precedent that adds clarity to the specific personal jurisdiction landscape. In *Ford Motor Co. v. Montana Eighth Jud. Dist. Ct.*, 141 S. Ct. 1017, 1026 (2021), the Court rejected the view that a causal link must exist between one's claims and the defendant's forum-related activities in order for a court to properly exercise specific jurisdiction.[1] Instead, *Montana Eighth* holds that it is sufficient that the suit merely "relates to" the defendant's contacts with the forum. For example, *Montana Eighth* found specific personal jurisdiction where the Defendant's contact with the forum state was limited to non-suit-related marketing, sales, and servicing in the forum state. Said another way, it was alone sufficient in the products liability suits that the defendant systematically served the forum markets by advertising, selling, and servicing its vehicles there, irrespective of whether the plaintiffs bought their cars in those states. *Id.* at 1028.

*Montana Eighth* is instructive here because Defendants have admitted that they purposely exploit the Illinois market: The Krul declaration they submitted at Dkt. 16-1 says that Defendants made more than $4 million in sales in Illinois, in the first three quarters of 2020 alone. This, paired with their implicit concession that Plaintiff's claims arise out of those forum-based contacts—i.e., the telemarketing calls to Plaintiff were transferred to ASIA employees in order to complete the sale to Plaintiff and others in this State, and ASIA and Benefytt issued an insurance quote to Plaintiff that includes the Illinois demographic information he provided—are sufficient for this Court to exercise personal jurisdiction. Plaintiff thus seeks leave to file an amended

---

[1]     *E.g., Cent. States, Se. & Sw. Areas Pension Fund v. Phencorp Reinsurance Co.*, 440 F.3d 870, 875 (7th Cir. 2006) (citing earlier precedent that conflated "related to" specific jurisdiction as requiring "jurisdiction over the person for a case arising from [forum-based] contacts").

complaint, a proposed draft of which is attached hereto as <u>Exhibit 1</u> ["AC"], in order to reflect

such facts and thereby moot Defendants' motion to dismiss. Plaintiff respectfully asks that this

motion be granted, as further detailed herein.

## I.      <u>BACKGROUND</u>

This is a Telephone Consumer Protection Act ("TCPA"), 47 U.S.C. § 227, case that

challenges telemarketing calls made by or on behalf of Defendant Benefytt Technologies, Inc.

("Benefytt") and its wholly-owned subsidiary, Defendant American Service Insurance Agency

LLC ("ASIA"). The complaint contains two counts: (1) Count I alleges violations of the TCPA's

national do-not-call registry rules, 47 C.F.R. § 64.1200(c)(2); and (2) Count II alleges violations

of the TCPA's "internal" or "company specific" do-not-call rules, 47 C.F.R. § 64.1200(d). *See*

47 U.S.C. § 227(c)(5) (private right of action).

Defendants moved to dismiss Plaintiff's complaint for purported lack of personal

jurisdiction on December 18, 2020. Dkt. 16. Defendants did not keep their arguments to the four

corners of Plaintiff's complaint. Instead, they submitted the declaration of Bryan Krul, a non-

employee, to refute Plaintiff's allegations that ASIA physically placed the calls at issue, by

asserting that neither Defendant owned the particular caller IDs used to call Plaintiff. Dkt. 16-1,

Krul Decl. ¶¶ 5-6.

The parties subsequently agreed to conduct jurisdictional discovery in advance of further

briefing on Defendants' motion to dismiss. However, when the time came to respond to

Plaintiff's requests, Defendants produced nothing and refused to produce deponents as noticed.

Plaintiff filed a motion to compel on March 3, 2021. Dkt. 19.

About a week before Defendants filed their motion to compel opposition papers, the

Supreme Court issued *Ford Motor Co. v. Montana Eighth Jud. Dist. Ct.*, 141 S. Ct. 1017, 1026

(2021), which clarified that specific personal jurisdiction may be exercised in suits that "relate to" a defendant's forum contacts, even in the absence of a causal link between those contacts and the plaintiff's injuries. This is material because, for example, Defendants themselves admit that they conduct extensive, systematic business in Illinois—generating $4.2 million in business attributable to Illinois in the first three quarters of 2020, alone. Dkt. 16-1, Krul Decl. ¶ 10. Moreover, even if Defendants did not themselves physically dial Plaintiff's and other class members' phone numbers, they concede that personal jurisdiction may exist through agency, Dkt. 25, Def.'s Resp. at 13—such as where sellers (like Defendants here) use a third party to illegally telemarket on their behalf.

In light of *Montana Eighth* and the agency issues Defendants raise in their motion to dismiss declaration and subsequent arguments, Plaintiff believes that it makes the most sense to simply amend his pleadings to address Defendant's assertions and include further allegations supporting this Court's jurisdiction. Plaintiff has good cause for these amendments, because they seek to add facts admitted by Defendants that were not available at the time of the initial pleading, and additional allegations that are designed to moot the jurisdictional concerns raised in Defendants' motion to dismiss.

## II.   LEGAL STANDARD

"[T]he decision to grant or deny a motion to file an amended pleading is a matter purely within the sound discretion of the district court." *Brunt v. Serv. Employees Int'l Union*, 284 F.3d 715, 720 (7th Cir. 2002). "When a plaintiff requests … leave to amend [his complaint], district courts should 'freely give leave when justice so requires.'" *NewSpin Sports, LLC v. Arrow Elecs., Inc.*, 2018 WL 6295272, at *12 (7th Cir. Dec. 3, 2018) (quoting Fed. R. Civ. P. 15(a)(2)).

4

IV. **ARGUMENT**

"In the absence of any apparent or declared reason—such as undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, futility of amendment, etc.—the leave [to amend] should, as the rules require, be 'freely given.'" *Foman v. Davis*, 371 U.S. 178, 182 (1962); *NewSpin Sports, LLC*, 2018 WL 6295272, at *12 ("The Supreme Court has interpreted [Fed. R. Civ. P. 15(a)(2)] to require a district court to allow amendment unless there is a good reason—futility, undue delay, undue prejudice, or bad faith—for denying leave to amend.") (citation omitted). Here, no apparent or declared reason exists to deny Plaintiff leave to amend his complaint:

No Undue Delay. There has been no undue delay, because this case is in its infancy. The parties have yet to conduct their Fed.R.Civ.P. 26(f) planning conference, and the case hasn't yet proceeded past the pleading stage.

No Bad Faith. There is no bad faith, either. The proposed changes to the complaint were spurred by facts provided by Defendant, and a Supreme Court case that was decided on March 25, 2021. The amendments are intended to moot Defendants' arguments about the jurisdictional sufficiency of the complaint. Plaintiff files this motion in hopes of alleviating the need for further briefing and judicial decision as to those arguments, so that the case can move through the litigation process more efficiently. Where Defendants' argument is essentially that the complaint is factually wrong, then it simply makes sense for Plaintiff to modify the complaint to address Defendants' factual assertions.

No Undue Prejudice. There is no undue prejudice to Defendants. The amendments are intended to directly address the jurisdictional concerns Defendants themselves raise. Moreover,

normal discovery has yet to even begin.

<u>Amendments Not Futile</u>. Other than jurisdiction, Defendants notably do not attack the sufficiency of Plaintiff's do-not-call violations. Because Plaintiff's proposed amendments only further bolster his prior meritorious allegations, his claims are decidedly not "frivolous."

As to Count I, a national do-not-call registry violation requires pleading facts that plausibly allege that the defendant or its agent "initiat[ed] any telephone solicitation to … [a] residential telephone subscriber who has registered his or her telephone number" on the National Do Not Call Registry. 47 C.F.R. 64.1200(c)(2). The plaintiff must have received at least two such calls in any 12-month period in order to have a private right of action. 47 U.S.C. § 227(c)(5). Plaintiff's proposed amended complaint alleges just that: Plaintiff registered his residential phone number with the National Do Not Call Registry in 2003, and he received dozens of telephone solicitations for Defendants despite this. *See* <u>Exhibit 1</u>, AC ¶¶ 27-31, 83. Defendants even provided him with a quote and emailed him an application *during* one of the calls at issue, on October 17, 2018. *Id.* ¶¶ 32-52. Plaintiff thus has adequately pleaded national do-not-call registry claims on behalf of himself and others like him, and the proposed amended complaint is not futile.

As to Count II, an internal do-not-call registry violation requires pleading facts that plausibly allege that the defendant or its agent "initiate[d] any call for telemarketing purposes to a residential telephone subscriber unless such person or entity has instituted procedures for maintaining a list of persons who request not to receive telemarketing calls made by or on behalf of that person or entity." 47 C.F.R. § 64.1200(d). Such procedures must be actually "instituted" and meet certain minimum standards, including having a written policy "available upon demand," sharing do-not-call requests with those calling on one's behalf, identifying the

6

telemarketer, and recording and honoring do-not-call requests. *Id.* Plaintiff sufficiently alleges multiple calls despite a prior do-not-call request, based on Defendants' non-existent or un-instituted procedures—as evidenced by the literally dozens of such unsolicited telemarketing calls he received. Exhibit 1, AC ¶¶ 28-30, 52. Consequently, amendment is not futile.

An agency relationship may serve as grounds for exercising specific personal jurisdiction. *ABN AMRO, Inc. v. Cap. Int'l Ltd.*, 595 F. Supp. 2d 805, 821 (N.D. Ill. 2008).[2] Plaintiff's proposed amendments also seek to add support to personal jurisdiction and Defendants' vicarious liability based on their use of a third-party agent to make the calls at issue on their behalf (including to Plaintiff and others in Illinois, in order to exploit the Illinois market), including based on theories of express or implied actual authority, apparent authority, and ratification. *See In re Rules & Regs. Implementing the TCPA*, 10 FCC Rcd. 12391, at ¶ 13 (1995) (recognizing FCC's rules implementing the TCPA "generally establish that the party on whose behalf a solicitation is made bears ultimate responsibility for any violations"); *In re Joint Petition Filed by DISH Network, LLC et al. for Declaratory Ruling Concerning the TCPA Rules*, 28 FCC Rcd. 6574 (2013) (recognizing that a seller may be liable for TCPA violations done on its behalf through agency principles like formal agency, apparent authority, and ratification).

Specifically, Defendants had the right to and did control the calls at issue, including how they were made and to whom, the geographic region in which such leads would be permitted, and the scripts used, and had the ability to audit, sufficient to support Defendants' express or implied actual authority over them.[3] Exhibit 1, AC ¶¶ 58-59. Agency and personal jurisdiction

---

[2]     *See also Daimler AG v. Bauman*, 571 U.S. 117, 135 n. 13 (2014) ("Agency relationships, we have recognized, may be relevant to the existence of *specific* jurisdiction.").

[3]     "[A]ctual authority may be express or implied." *Opp v. Wheaton Van Lines, Inc.*, 231 F.3d 1060, 1064 (7th Cir. 2000). "Implied authority is actual authority that is implied by facts and circumstances and it may be proved by circumstantial evidence." Id. "[It] is created through words or conduct of the

also exist through apparent authority,[4] as well, particularly in light of each Defendants' direct participation *during the calls* both over the phone and through email, the fact that they provided the telemarketer with access to their systems or use of their tradenames and proprietary pricing and quote information, their payment of compensation to the caller for such leads, and subsequent performance on the products purchased during the calls at issue. *Id.* ¶¶ 60-62. Finally, the amended complaint also alleges that Defendants ratified[5] the telemarketing at issue because they knew about the calls (indeed, they participated on them), knew that they were going to consumers who had asked not to be called or were registered on the National Do Not Call Registry (including from prior lawsuits and public admissions), but continued to retain the monetary and advertising benefits derived therefrom. *Id.* ¶¶ 63-69. Defendants even issued a formal quote for products and services, *Id.* at Ex. A, with full knowledge of the improper telemarketing origins of the call. Agency is adequately pleaded, as is Defendants' resulting vicarious liability and the Court's personal jurisdiction over them for such illegal marketing activities in Illinois.

These allegations are far from futile: Judge Norgle denied a motion to dismiss for lack of personal jurisdiction for analogous claims against Defendant Benefytt (f/k/a Health Insurance

---

principal which, reasonably interpreted, cause an agent to believe that the principal consents to have an act done on his behalf." *Charvat v. Valente*, 2015 WL 3575636, at *2 (N.D. Ill. June 8, 2015).

[4]     "Apparent authority is the power held by an agent or other [non-agent] actor to affect a principal's legal relations with third parties when a third party reasonably believes the actor has authority to act on behalf of the principal and that belief is traceable to the principal's manifestations." Rest. (3d) of Agency § 2.03; *Opp*, 231 F.3d at 1065 ("Under the doctrine of apparent authority, a principal will be bound not only by the authority that it actually gives to another, but also by the authority that it *appears* to give.") (emphasis added).

[5]     Ratification occurs in the TCPA context when a party that did not place calls knowingly accepts their benefit, thereby assenting to the actions. *Aranda v. Caribbean Cruise Line, Inc.*, 179 F. Supp. 3d 817, 833 (N.D. Ill. 2016). A party may also manifest assent to the other party's acts by "willful ignorance"—i.e., where the principal may not know the material facts, but has "ratified with awareness that such knowledge was lacking." Rest. (3d) Agency § 4.01 at cmt. b; *see also Henderson v. United Student Aid Funds, Inc.*, 918 F.3d 1068, 1075 (9th Cir. 2019).

Innovations, Inc.) last year in *Bilek v. Nat'l Cong. of Emps., Inc.*, 470 F. Supp. 3d 857, 861-2

(N.D. Ill. 2020), under similar facts based on its use of third parties to conduct telemarketing for

it. And this is particularly the case here, where Defendants plainly knew their telemarketers like

those who called Plaintiff were failing to comply with the TCPA's requirements (including

through repeated TCPA lawsuits and government investigations), but accepted business from

them in spite of this. Exhibit 1, AC ¶¶ 68-69. After all, a "principal that learns of illegal behavior

committed by its agents, chooses to do nothing, and continues to receive the gains, is liable for

the agent's acts." *United States v. Dish Network*, *LLC*, 954 F.3d 970, 976 (7th Cir. 2020), *cert.

dismissed*, 141 S. Ct. 729 (2021).[6]

Plaintiff also alleges each prerequisite for certification under Fed.R.Civ.P. 23, including:

(1) ascertainability based on the availability of class-identifying records available through

Defendants and their vendors (Exhibit 1, AC ¶ 80); (2) numerosity under Rule 23(a)(1), based on

thousands of class members (at least) in each class (*Id.* ¶ 73); (3) the existence of common

questions of law or fact under Rules 23(a)(2), such as whether "prior express invitation or

permission" existed, whether Defendants' procedures were proper and implemented, and

Defendants' willfulness (*Id.* ¶ 74); (4) typicality under Rule 23(a)(3), based on the similarity of

Plaintiff's claims under the TCPA with the classes (*Id.* ¶ 75); (5) adequacy of representation

under Rule 23(a)(4), given the alignment in interests and experience of counsel (*Id.* ¶ 76); (6)

predominance under Rule 23(b)(3), in light of Defendants' common course of conduct towards

Plaintiff and other class members (i.e., using a vendor to make calls to then route to ASIA for

purposes of selling Benefytt products and services), which allows for class-wide resolution of

---

[6]     This language from *Dish Network* should not be construed to hold that an agency relationship is
necessary to a finding of ratification. Instead, "[r]atification may create a relationship of agency when
none existed before." Rest. 3d Agency § 4.03 cmt. a. A formal agency relationship is therefore not a
prerequisite to a finding of liability through ratification. Rest. (3d) of Agency § 4.01 cmt. b.

common questions, like whether prior express invitation or permission existed, whether the violations were willful, and reasonableness of Defendants' procedures, in one fell swoop (*Id.* ¶ 74); and (7) superiority under Rule 23(b)(3), in light of the judicial economy and justice served in class-wide redress given the low individual damages available under the statute (*Id.* ¶¶ 77-78). Plaintiff thus has adequately pleaded these causes of action, and because his proposed amended complaint would survive a motion to dismiss, amendment is not futile.

As such, good cause exists to allow Plaintiff leave to file the proposed amended complaint.

## IV.    <u>CONCLUSION</u>

For the foregoing reasons, Plaintiff respectfully requests that the Court grant leave for Plaintiff to file his proposed Amended Class Action Complaint, attached as <u>Exhibit 1</u>. For the Court's reference, a red-lined comparison between the operative complaint and proposed amendments is attached as <u>Exhibit 2</u>.[7]

<div style="margin-left: 50%;">

Respectfully submitted,

GEORGE MOORE, individually and
on behalf of others similarly situated

By:  */s/ Alexander H. Burke*

</div>

Dated: May 6, 2021

Alexander H. Burke
Daniel J. Marovitch
BURKE LAW OFFICES, LLC
909 Davis St., Suite 500
Evanston, IL 60201
Telephone: (312) 729-5288
aburke@burkelawllc.com
dmarovitch@burkelawllc.com

*Counsel for Plaintiff*

---

[7]     The proposed amended complaint's Exhibit A also removes redactions to the in-District city, state, and ZIP code on page 3 of the quote materials Benefytt emailed Plaintiff during one of the calls.

## CERTIFICATE OF SERVICE

I hereby certify that, on May 6, 2021, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to all counsel of record.

_/s/ Alexander H. Burke_