# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| GEORGE MOORE, individually and on behalf of all others similarly situated, ) ) | Case No. 1:20-CV-06206 |
| ) Plaintiff, ) v. ) ) AMERICAN SERVICE INSURANCE ) AGENCY LLC and BENEFYTT ) TECHNOLOGIES, INC., ) ) Defendants. ) | Honorable John Kness  Magistrate Judge Jeffrey Cole |

## DEFENDANTS' RESPONSE IN OPPOSITION TO PLAINTIFF'S MOTION FOR LEAVE TO AMEND COMPLAINT

# **TABLE OF CONTENTS**

                                                                                                                                                                        **Page**

I. Introduction ............................................................................................................................. 1

II. Relevant Background ............................................................................................................. 2

    A. The Operative Complaint and Foundational Allegations ................................................. 2

    B. The Pending Motion to Dismiss and Fully Briefed Motion to Compel ............................. 3

    C. The Motion to Amend and New Allegations .................................................................... 4

III. Applicable Legal Standard .................................................................................................... 5

IV. Plaintiff's Motion to Amend Should Be Denied Under Rule 15 as Untimely, Prejudicial, and Futile ............................................................................................................................... 6

    A. Plaintiff's Dilatory Behavior is Unjustified and Has Prejudiced Defendants ..................... 6

    B. Plaintiff's Proposed Amendment is Futile ......................................................................... 8

V. Conclusion ............................................................................................................................. 12

# TABLE OF AUTHORITIES

Page(s)

### Cases

*Bower v. Jones*,
   978 F.2d 1004 (7th Cir. 1992) ................................................................................................ 8
*Ford Motor Co. v. Montana Eighth Jud. Dist. Ct.*,
   141 S.Ct. 1017 (2021) .............................................................................................. 4, 10, 11
*Gilman OPCO LLC v. Lanman Oil Co., Inc.*,
   2014 WL 1284499 (N.D. Ill. March 28, 2014) ................................................................ 4, 8, 9
*Hoopla Sports and Entertainment, Inc. v. Nike, Inc.*,
   1998 WL 60776 (N.D. Ill. Feb. 5, 1998) ................................................................................ 6
*King v. Cooke*,
   26 F.3d 720 (7th Cir. 1994) .......................................................................................... 6, 7, 8
*McCoy v. Iberdrola Renewables, Inc.*,
   760 F.3d 674 (7th Cir. 2014) ................................................................................................ 7
*Shanahan v. Nat'l Auto Protection Corp.*,
   2020 WL 3058088 (N.D. Ill. June 9, 2020) .................................................................... 2, 11
*Smith v. State Farm Mutual Auto. Ins. Co.*,
   30 F.Supp.3d 765 (N.D. Ill. 2014) ......................................................................................... 9
*SmithKline Beecham Corp. v. Pentech Pharmaceuticals, Inc.*,
   2002 WL 1303137 (N.D. Ill. June 13, 2002) ........................................................................ 6
*Swanigan v. City of Chicago*,
   775 F.3d 953 (7th Cir. 2015) ................................................................................................ 6
*Tamari v. Bache & Co.*,
   838 F.2d 904 (7th Cir. 1988) ................................................................................................ 7
*Ticketreserve, Inc. v. Viagogo, Inc.*,
   656 F.Supp.2d 775 (N.D. Ill. 2009) ...................................................................................... 9
*Villa v. City of Chicago*,
   924 F.2d 629 (7th Cir. 1991) ................................................................................................ 6
*Williams v. USPS*,
   873 F.2d 1069 (7th Cur, 1989) ............................................................................................. 8

### Statutes

47 U.S.C. § 227 .......................................................................................................................... 2

### Rules

Fed. R. Civ. P. 1 ......................................................................................................................... 6
Fed. R. Civ. P. 15(a)(1)(B) ........................................................................................................ 6
Fed. R. Civ. P. 15(a)(2) .............................................................................................................. 7
Rule 15 ....................................................................................................................................... 8
Rule 15(a) ................................................................................................................................... 8

I.  **Introduction**

Plaintiff's Motion for Leave to Amend (the "Motion") (Dkt. 30) is purportedly made in direct response to the jurisdictional issues raised by Defendants "in order to better focus the complaint's allegations." (Mot. at 2). It is not the result of any newly-discovered information but comes nearly seven months after the filing of the original complaint; five months after Defendants filed their motion to dismiss with a supporting declaration refuting the basis for personal jurisdiction alleged in Plaintiff's complaint; four months after the parties engaged in jurisdictional discovery; and after Plaintiff sought to compel Defendants' compliance with the jurisdictional discovery – a motion that is now fully-briefed and pending before this Court. Before engaging in this contentious, costly, and time-consuming discovery and motion practice, Defendants' counsel expressly recommended that Plaintiff should amend his complaint. Plaintiff's counsel flatly refused and incorrectly insisted, as he still does, that "the existing complaint contains allegations sufficient to support personal jurisdiction and Defendants' vicarious liability." (*Id.* at 1). Notwithstanding Plaintiff's insistence to contrary, the proposed amended complaint should not survive a motion to dismiss under Rule 12(b)(6).

Plaintiff is not entitled to amend his complaint at this time without written consent from either Defendants or this Court, as his opportunity to do so as a matter of course under the federal rules has long since passed. His Motion should be denied because: (1) it is unduly delayed without any justification; (2) Defendants would be further prejudiced if the amendment were permitted; and (3) the proposed amendment is futile.

## II.     Relevant Background

### A.     The Operative Complaint and Foundational Allegations

Plaintiff filed his Class Action Complaint on October 19, 2020 ("the "Complaint") (Dkt. 1). Specifically, Plaintiff alleges that he received numerous telephone calls from ASIA in violation of the Telephone Consumer Protection Act ("TCPA"), 47 U.S.C. § 227, *et seq.*, and that ASIA placed each of these telephone calls in an effort to sell Benefytt's products as the agent for and on behalf of Benefytt. (Compl. at ¶¶ 18-20, 22-23, 43). Plaintiff's repeated and unambiguous allegation that ASIA initiated the subject telephone calls is central to his Complaint and agency theory of liability in which he is seeks to hold Benefytt vicariously liable for the actions of its alleged agent ASIA. Attempting to add factual support for his foundational allegation, Plaintiff further specifies the telephone numbers from which he allegedly received the calls at issue and claims that these numbers belong to ASIA. (Compl. at ¶¶ 23, 43).

Plaintiff's foundational allegations are not only necessary to his substantive TCPA claims and theory of liability, they are crucial in Plaintiff's effort to invoke this Court's jurisdiction over Defendants in Illinois. Indeed, because there is no general jurisdiction over Defendants because neither is "at home" in Illinois (a fact that is not seriously disputed by Plaintiff or even adequately alleged as a source of personal jurisdiction in the Complaint), the only manner in which these two non-resident Defendants may be hailed in this state is through specific jurisdiction. In TCPA cases, this means that any specific personal jurisdiction must arise from the relevant telephone calls at issue. See *Shanahan v. Nat'l Auto Protection Corp.*, 2020 WL 3058088, at *3 (N.D. Ill. June 9, 2020). Consequently, Plaintiff's entire lawsuit in Illinois hinges on his claim that ASIA called Plaintiff, and that such direct contacts may be imputed to Benefytt for both jurisdictional and liability purposes.

**B.     The Pending Motion to Dismiss and Fully Briefed Motion to Compel**

The foundational allegations upon which he bases his Complaint are false, as Plaintiff quickly learned on December 18, 2020 when Defendants filed their Motion to Dismiss Complaint and supporting Declaration of Bryan Krul. (*See* Dkts. 16 and 16-1). The Krul Declaration directly refutes Plaintiff's allegation that specific jurisdiction exists because it establishes that Defendants do not and have never used or been assigned the telephone numbers from which Plaintiff alleges to have received the subject telephone calls; and Defendants did not and could not have made the subject telephone calls. (Dkt. 16-1 at ¶¶ 5-6).

Upon receipt of Defendants' motion to dismiss and supporting declaration, and after much back-and-forth communication between counsel regarding the timing and scope thereof, Plaintiff served so-called "jurisdictional discovery" requests on Defendants. However, as the requests themselves make clear, Plaintiff did not seek information to support his alleged basis for personal jurisdiction; rather, he was in search of some other basis for personal jurisdiction over Defendants to support his suspicion that "[s]omething is fishy," (Dkt. 19 at 6), and that some other unnamed and unknown third party may have been involved. Defendants responded to the requests to the extent that they related to the jurisdictional matters pled in the Complaint, while properly objecting to the remaining wide-ranging and speculative requests fishing for information well outside the scope of the pleadings.

While Plaintiff seemed to have abandoned his foundational allegations upon which he based his Complaint, he also refused (despite the repeated insistence of Defendants' counsel) to amend his complaint at this time to conform his pleading to the jurisdictional discovery sought. In fact, Plaintiff held steadfast to his position that his personal jurisdiction allegations were sufficient and even doubled down, going so far as to move to compel Defendants to respond to his facially

3

deficient jurisdictional discovery requests that had no basis in his complaint allegations. Plaintiff sought this relief notwithstanding the other notable fact that he was not entitled to serve any jurisdictional discovery in the first place because the Court had not authorized the issuance of such discovery. *See Gilman OPCO LLC v. Lanman Oil Co., Inc.*, 2014 WL 1284499, at *6 (N.D. Ill. March 28, 2014) (stating that the right to conduct jurisdictional discovery is not automatic and a plaintiff must first show that the factual record is at least ambiguous or unclear on the jurisdiction issue). Plaintiff's motion to compel is now fully briefed and a ruling has not yet been issued. (*See* Dkts. 19, 25).

      C.      **The Motion to Amend and New Allegations**

Months after engaging in contentious jurisdictional discovery that culminated in the fully-briefed motion to compel, Plaintiff now moves to amend his complaint in an effort "to directly address the jurisdictional concerns Defendants themselves raise." (Mot. at 5). Yet, Plaintiff's Motion comes nearly ***five months*** *after Defendants brought these jurisdictional matters to Plaintiff's attention*; and Plaintiff does not explain his sudden change of heart or the reason for his five-month long delay in seeking to amend. Additionally, he continues to defend his previous unrelenting insistence that it is not even necessary to amend his complaint, claiming "the existing complaint contains allegations sufficient to support personal jurisdiction and Defendants' vicarious liability." (Mot. at 1).

Nonetheless, Plaintiff seeks to perfect his personal jurisdiction claim over Defendants by "add[ing] allegations about how Defendants' Illinois-related business contacts 'relate to' the alleged violations." (Mot. at 2). Plaintiff's newly proposed jurisdictional allegations do not involve the calls at issue but instead discuss Defendants' business in general terms. Citing to *Ford Motor Co. v. Montana Eighth Jud. Dist. Ct.*, 141 S.Ct. 1017 (2021) for support, (*see* Mot. at 2),

Plaintiff now seeks to contend that "Defendants each systematically exploit the Illinois market by marketing in this District and throughout the State both directly and through third-party agents, by providing the products and services purchased during such marketing to those Illinois citizens in this State, and by retaining the monetary and other benefits derived from such purposeful, Illinois-based contacts." (Dkt. 30-3 at ¶ 17).

Plaintiff makes one other notable modification in his proposed amended complaint: alleging that "ASIA *and/or some person on its behalf*" made the subject calls to Plaintiff. (Dkt. 30-3 at 25, 29) (emphasis added). When read in conjunction with Plaintiff's newly-proposed jurisdictional allegations regarding Defendants' alleged use of "third-party agents," "telemarketing," and "lead generation" to "exploit the Illinois market," (*see* Dkt. 30-3 at ¶¶ 17-18), it appears that Plaintiff may be seeking to hold both Defendants vicariously liable (instead of just Benefytt as the operative complaint alleges) for the actions of this unknown party under an entirely speculative subagency theory. However, the proposed amended complaint contains no details whatsoever regarding this unnamed individual or entity, the extent of their involvement (if even involved at all), or their relationship to either of the Defendants (other than to say that they acted on ASIA's behalf). Though it remains unclear, if Plaintiff is seeking to hold both Defendants vicariously liable, this would be a significant change from what is alleged in the Complaint and that currently forms the basis of Plaintiff's substantive and jurisdictional claims against Defendants, and Plaintiff identifies no "newly discovered" information to support his rank speculation.

### III.     Applicable Legal Standard

Consistent with its goal of "secur[ing] the just, speedy, and inexpensive determination of every action and proceeding," Fed. R. Civ. P. 1, the Federal Rules of Civil Procedure allow a party

5

to amend their complaint once as a matter of right even after an opposing party files a responsive pleading or motion to dismiss. *See* Fed. R. Civ. P. 15(a)(1)(B). However, a party is entitled to do so only within 21 days of the filing of an opposing party's responsive pleading or motion to dismiss so as "to amend his complaint to flesh out his original claims or attempt to cure any jurisdictional or legal defects." *Swanigan v. City of Chicago*, 775 F.3d 953, 963 (7th Cir. 2015). If a party fails to do so within the required timeframe, he may not amend his complaint except through the opposing party's consent or leave of court. Fed. R. Civ. P. 15(a)(2).

Determining whether leave to amend should be given is within the sound discretion of the court. *Hoopla Sports and Entertainment, Inc. v. Nike, Inc.*, 1998 WL 60776 (N.D. Ill. Feb. 5, 1998) (internal citations omitted). It is well-established that leave is inappropriate where there is undue delay, bad faith, dilatory motive on the part of the movant, undue prejudice to the opposing party, or futility of the amendment. *Villa v. City of Chicago*, 924 F.2d 629, 632 (7th Cir. 1991) (internal quotes and citation omitted). The movant has the burden of proving that the non-movants will not suffer any prejudice if the amendment is allowed. *King v. Cooke*, 26 F.3d 720, 724 (7th Cir. 1994). "The fact that leave to amend is freely given under Rule 15(a) does not mean that the movant is relieved of any duty to make a proper showing." *SmithKline Beecham Corp. v. Pentech Pharmaceuticals, Inc.*, 2002 WL 1303137, at *3 (N.D. Ill. June 13, 2002).

**IV.   Plaintiff's Motion to Amend Should Be Denied Under Rule 15 as Untimely, Prejudicial, and Futile**

    **A.   <u>Plaintiff's Dilatory Behavior is Unjustified and Has Prejudiced Defendants</u>**

Plaintiff argues that his request for leave to amend is intended to "better focus the complaint's allegations" in response to Defendants' motion to dismiss for lack of personal jurisdiction. (Mot. at 1-2). Yet, Defendants filed their motion to dismiss and supporting declaration on December 18, 2020 – nearly five months before the filing of Plaintiff's Motion.

6

There is no excuse or justification for Plaintiff's five-month long delay in seeking leave to amend at this juncture, nor does Plaintiff even attempt to make any such argument in his Motion. Rather, Plaintiff simply asserts in a conclusory manner that "[t]here has been no undue delay, because this case is in its infancy." (Mot. at 5). This ignores Plaintiff's stated reason for his need to amend, which is to address jurisdictional issues that Defendants raised five months ago. It also ignores the fact that the proposed amendment is not based on any newly discovered information but arrives nearly seven months after the original complaint was filed. Notably, Plaintiff is a sophisticated litigant and has previously filed a TCPA lawsuit that, as here, he filed in federal court and sought to represent a class of individuals similarly situated. *See Moore v. Contactability.com LLC, et al.*, No. 8:20-CV-569 (C.D. Cal. Mar. 20, 2020) (Dkt. 1). He was or should be fully aware of his right under the federal rules to amend his pleading within 21 days of the filing of Defendants' motion to dismiss.

Undue delay to this extent is, by itself, justification enough for the denial of leave to amend. *See McCoy v. Iberdrola Renewables, Inc.*, 760 F.3d 674, 687 (7th Cir. 2014) (affirming the district court's denial of leave to amend based on "undue delay alone" where the counter-plaintiff "should have known about" its proposed new counterclaims "when it asserted its original counterclaims," where "the parties had already invested significant resources in the case," and where the counter-plaintiff "presented no excuse for omitting" those new counterclaims); *King v. Cooke*, 26 F.3d 720, 723 (7th Cir. 1994) ("[T]he longer the delay, the greater the presumption against granting leave to amend .... [W]hen extreme, delay itself may be considered prejudicial.") (internal quotes omitted); *Tamari v. Bache & Co.*, 838 F.2d 904, 909 (7th Cir. 1988) ("The longer the delay in seeking leave to amend, the likelier is it both that the delay is inexcusable ... and that granting leave to amend will, by further delaying the lawsuit, impair the public interest in the prompt

7

resolution of legal disputes. The interests of justice go beyond the interests of the parties to the particular suit; all other considerations to one side, delay in resolving a suit may harm other litigants by making them wait longer in the court queue. Hence, when extreme, delay itself may be considered prejudicial, and [the district court] was entitled to conclude that this was such a case.") (internal quotes and citation omitted).

Moreover, the timing of Plaintiff's Motion is indicative of a dilatory purpose to prejudice Defendants. Indeed, the delay here is not the result of a mistake, inadvertence, or an oversight but was a *willful refusal to amend until **after** forcing Defendants to engage in costly and time-consuming litigation* that continues to postpone resolution of the motion to dismiss. As the movant, it is Plaintiff's burden to prove that Defendants will suffer no prejudice if the amendment is permitted. *King*, 26 F.3d at 724. Plaintiff cannot overcome this burden and makes no effort to do so in his Motion.

### B. Plaintiff's Proposed Amendment is Futile

Plaintiff's Motion is clearly an attempt to avoid the effect of Defendants' pending motion to dismiss. However, his proposed amended complaint suffers from the same defect as the operative complaint, would not survive a motion to dismiss under Rule 12(b)(6), and should be denied as futile. *See Bower v. Jones*, 978 F.2d 1004, 1008 (7th Cir. 1992) (stating that an amendment is futile if it "merely restates the same facts using different language, or reasserts a claim previously determined," or "when it fails to state a valid theory of liability, or could not withstand a motion to dismiss"); *Williams v. USPS*, 873 F.2d 1069, 1072 (7th Cur, 1989) (stating that "[f]ailure to remedy the jurisdictional defects of a complaint is one example of where an amendment would prove futile").

8

Plaintiff is unable to overcome his burden of establishing a *prima facie* or "colorable" claim of personal jurisdiction over Defendants. *See Gilman OPCO LLC v. Lanman Oil Co., Inc.*, 2014 WL 1284499, at *6 (N.D. Ill. March 28, 2014) (internal citation omitted); *see also The Ticketreserve, Inc. v. Viagogo, Inc.*, 656 F.Supp.2d 775 (N.D. Ill. 2009). It is undisputed that there is no general jurisdiction over Defendants in this forum because neither one of them is "at home" in Illinois. Thus, the inquiry turns to the disputed issue of whether there is a factual basis for Plaintiff to assert specific jurisdiction over Defendants in Illinois. According to the well-established case law, there is not.

Contrary to Plaintiff's complaint allegations (both in the original and proposed amended complaints), the Krul Declaration establishes that none of the calls Plaintiff allegedly received were made by Defendants, and none of the telephone numbers from which those calls were allegedly made were ever assigned to, or used by, Defendants. (*See* Dkt. 16-1). Although Plaintiff additionally alleges in his proposed amended complaint the existence of some other unnamed and unknown third party that may have placed the calls "on behalf of" ASIA, he fails to allege any other details regarding this possible other source or any facts that might create a reasonable inference of an agency relationship between the two, or why Plaintiff now contends that some unknown third-party made the calls at issue (based on newly discovered information or otherwise). This is the kind of "bare, attenuated, or unsupported assertion[ ] of personal jurisdiction" that is insufficient to create a prima facie or colorable showing of personal jurisdiction. *Gilman OPCO LLC v. Lanman Oil Co., Inc.*, 2014 WL 1284499, at *6 (N.D. Ill. March 28, 2014) (internal citation omitted). Further, if Plaintiff seeks to hold both Defendants vicariously liable for the alleged actions of this unknown third party in making the telephone calls at issue, he has certainly failed to allege sufficient (or any) facts to plead a plausible basis for doing so under a subagency theory

9

of liability.  *Cf. Smith v. State Farm Mutual Auto. Ins. Co.*, 30 F.Supp.3d 765, 775-76 (N.D. Ill. 2014).

Plaintiff also adds allegations in his proposed amended complaint regarding Defendants' alleged exploitation of the Illinois market and "heavy reliance" on the non-Illinois specific use of telemarketing and lead generation generally.  In this manner, Plaintiff attempts to liken his case to *Ford Motor Co. v. Montana Eighth Jud. Dist. Ct.*, 141 S.Ct. 1017 (2021) – a case that is inapposite and does not change the personal jurisdiction standard or the simple fact that Plaintiff still fails to allege a plausible basis for exercising specific jurisdiction over Defendants.  In *Ford Motor Co.*, the Supreme Court found that there was specific jurisdiction over Ford in products liability suits stemming from the malfunction of the motor company's products in the forum states.  *Id.* at 1032. In so holding this, the Supreme Court rejected the motor company's argument that specific jurisdiction was lacking because the actual vehicles that malfunctioned and formed the basis of the lawsuit were not designed, manufactured, or sold in the forum states.  *Id.* at 1023.  Rather, it premised its holding regarding the existence of specific jurisdiction on the facts that (1) the automaker conducts "substantial business" in the forum state such that it "exploits a market" in the forum state; (2) that substantial business, which consists of the "wide-ranging promotion[ ]" of automobiles and related products within the forum state, is sufficiently "related to" to the underlying personal injury suits because they involve "the very vehicles" the automaker extensively promotes, sells, and services in the forum states, and which caused injuries in the forum states; and (3) allowing jurisdiction is fair and the automaker has "clear notice" that it will be subject to jurisdiction in that particular situation where the automaker's products, which it systematically markets and services in the forum state, malfunction in the forum state.  *Id.*, 1022-32.

10

This dispute is in stark contrast to the *Ford Motor Co.* case and the facts here distinguishable on each of the important points upon which the Supreme Court based its holding. First, unlike the automaker in *Ford* that did not dispute the substantial extent of its business exploited in the forum state, Defendants dispute here that they conduct "substantial business" in Illinois. As the Krul Declaration provides, Defendants' consolidated revenues attributable to business in Illinois is, collectively, merely 2.5%. (*Id.* at ¶ 10). (*See* Dkt. 16-1 at ¶ 10). Second, and beyond the lack of any substantial business in Illinois, Defendants have differing businesses that should not and cannot be considered as one (despite Plaintiff's efforts to lump the two Defendants together without explanation); though, in any case, the business activities of neither one can be said to be "related to" the alleged telephone calls at issue forming the basis of Plaintiff's TCPA claims. As the Supreme Court importantly noted, "To see why [the automaker] is subject to jurisdiction in these cases [ ] consider first the business that the company regularly conducts in [the forum states]." *Id.* at 1028.

Here, Benefytt is a third party administrator that services and develops health insurance products, and ASIA is an independent sales agency that acts as a seller of such health insurance products. If Defendants systematically serve and exploit any market in Illinois, it would be for the very health insurance products that, together, they administer, service, develop, and sell to consumers. But Plaintiff does not allege any injury "relating to" these health insurance products. Instead, he alleges that the source of his injury is *the act of promoting the health insurance products, in and of itself and Plaintiff did not purchase any health insurance products that are at the center of Defendants' businesses*. In TCPA cases, the law is well-established that any claim of specific jurisdiction must arise from the alleged telephone calls. *See Shanahan*, 2020 WL 3058088 at \*3. Finally, Defendants do not have "clear notice" and cannot reasonably anticipate

11

being hailed into Illinois for a lawsuit premised on telephone calls that neither of them made, or that were allegedly made by an unknown source but for which Plaintiff cannot plausibly allege any connection to Defendants.

The additional allegations Plaintiff includes in his proposed amended complaint meant to overcome the specific jurisdiction hurdle fare no better than those he asserts in the operative complaint. In neither case does Plaintiff state a prima facie claim of specific jurisdiction over Defendants sufficient to survive a motion to dismiss under Rule 12(b)(6). Plaintiff's Motion should be denied because the proposed amended complaint is futile.

## V.  Conclusion

For all of these reasons, Defendants respectfully request the Court enter an Order denying Plaintiff's Motion for Leave to Amend Complaint.

Dated:  June 2, 2021

Respectfully submitted,

AMERICAN SERVICE INSURANCE AGENCY LLC
and BENEFYTT TECHNOLOGIES, INC.

By:  /s/ Garry W. O'Donnell
       One of Its Attorneys

Garry W. O'Donnell
garry.odonnell@gmlaw.com
Admitted *Pro Hac Vice*
Sherine Marder
Admitted *Pro Hac Vice*
sherine.marder@gmlaw.com
GREENSPOON MARDER LLP
2255 Glades Rd., Suite 400E
Boca Raton, FL 33431

-and-

Timothy A. Hudson
TABET DIVITO & ROTHSTEIN, LLC

209 South LaSalle St., Ste. 700
Chicago, IL 60604
Phone: 312-762-9476
Fax: 312-762-9451
thudson@tdrlawfirm.com
ARDC No. 6271244