**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| GEORGE MOORE, individually and on behalf of others similarly situated, | ) ) ) | Case No. 1:20-cv-06206 |
| Plaintiff, | ) ) | |
| v. | ) ) | |
| AMERICAN SERVICE INSURANCE AGENCY LLC and BENEFYTT TECHNOLOGIES, INC., | ) ) ) | Hon. Judge John F. Kness Hon. Mag. Judge Jeffrey Cole |
| Defendants. | ) | |

**PLAINTIFF'S REPLY IN SUPPORT OF
MOTION FOR LEAVE TO AMEND COMPLAINT**

Plaintiff received dozens of unsolicited telemarketing calls he reasonably believed were placed by Defendant ASIA, to sell Benefytt goods and services. Defendants submitted a declaration suggesting that they didn't place the calls at issue, and meet-and-confer discussions suggest that Defendants instead hired a telemarketing vendor to transfer the calls Plaintiff received to them (so-called "warm transfers"), so that they could try to sell Plaintiff their goods and services, which they did. *See* Dkt. 1-1. To the extent neither Defendant "placed" the calls to Plaintiff, this doesn't change whether they should be held liable: Hiring someone to make illegal calls for you isn't a loophole the TCPA permits. *In re TCPA*, 28 FCC Rcd. 6574, ¶ 1 (2013).

Defendants now argue that, not only should Plaintiff be denied discovery to address and test their outside-the-pleadings declaration, Plaintiff shouldn't be allowed to amend his complaint to reflect what they claim actually occurred,[1] as well as new Supreme Court precedent that materially changes the way courts apply the specific jurisdiction analysis.

---

[1] Note, however, that Plaintiff's operative, original complaint also contemplated that Defendants may have used a third party to physically place the calls for them. Dkt. 1, Compl. ¶¶ 45, 60, 61, 75, 85. The proposed amendments, therefore, do not impact Plaintiff's ultimate intent to hold Defendants accountable for the illegal telemarketing at issue.

As explained below, the motion for leave should be granted.

### A.  Plaintiff has not been dilatory.

Defendants' primary argument is that Plaintiff has been unacceptably dilatory in requesting leave to amend. That's not so: This case isn't past the pleading stage. The regular discovery period has yet to begin, and the Court hasn't entered a Rule 16 scheduling order. The parties haven't even yet briefed Defendants' motion to dismiss, Dkt. 16. No "undue delay" can exist in amending one's pleading where the case hasn't gotten off the ground yet.

Defendants' argument that Plaintiff should have filed his motion for leave to amend "within 21 days of the filing of Defendants' motion to dismiss" ignores Fed.R.Civ.P. 15: Beyond permitting amendment "as a matter of course" within 21 days of a Rule 12(b) motion, the Federal Rules *also* explicitly permit amendment with the opponent's written consent or the Court's leave, which "should [be] freely give[n] … when justice so requires." Fed.R.Civ.P. 15(a). Here, the Court set no deadline for moving to amend pleadings, and Plaintiff thus was not required to move for leave to amend by any particular date. The Supreme Court didn't issue *Montana Eighth* until March 25, 2021, and Plaintiff diligently reached out to defense counsel thereafter to meet-and-confer about seeking leave to amend. This motion was thus timely.

Defendants' citation to *McCoy v. Iberdrola Renewables, Inc.*, 760 F.3d 674 (7th Cir. 2014), to suggest that "[u]ndue delay to this extent is, by itself, justification enough for the denial of leave to amend[,]" Defs.' Br. p. 7, misstates the decision. Rather, *McCoy* noted the fact that "undue delay generally arises when a plaintiff seeks leave to amend deep into the litigation[,]" that "[u]ndue delay is unusual at the pleading stage" and is "approach[ed] … with some skepticism," and cited case law holding that "[d]elay alone is insufficient justification [to deny leave to amend]; prejudice to the nonmovant must also be shown." *Id.* at 687 (citations omitted).

2

However, *McCoy* was an exceptional case; where the appellant waited over a year-and-a-half after being a party to the case and six months after its counterclaims were dismissed to move to amend with what "look[ed] more like procedural gamesmanship than legitimate ignorance or oversight," the Court found denial of leave to amend appropriate.

This is not such an exceptional case, because neither Defendant has answered the complaint, and there is no scheduling order yet in place.[2] Unlike the appellant in *McCoy*, Plaintiff has good justification for moving to amend now: Though Plaintiff has been pursuing jurisdictional discovery in anticipation of responding to Defendants' pending motion to dismiss, Dkt. 19,[3] the Supreme Court's *Montana Eighth* ruling changes the dynamic. Before *Montana Eighth*, lower courts tended to impose a causational requirement between a defendant's forum-related contacts and the plaintiff's suit.[4] *Montana Eighth* clarified that this is not the rule: It is sufficient that the suit "relates to" the defendant's contacts with the forum. *Ford Motor Co. v. Montana Eighth Jud. Dist. Ct.*, 141 S. Ct. 1017, 1026 (2021). Because Defendants already concede that they derive millions of dollars of business annually from Illinois, and Plaintiff's suit relates to their forum-related contacts (i.e., paying a vendor to send them "warm transfer leads"

---

[2]   The other decisions Defendants cite don't help them, either. In *King v. Cooke*, 26 F.3d 720, 723-24 (7th Cir. 1994), the Seventh Circuit *affirmed* leave to amend being granted more than three years after the movants filed their answer, upon a finding that the non-moving party wasn't unduly prejudiced. And in *Tamari v. Bache & Co. (Lebanon) S.A.L.*, 838 F.2d 904, 909 (7th Cir. 1988), the Court found that "extreme ... delay itself may be considered prejudicial," in finding the plaintiffs' 10-year delay in moving for leave to add a negligence claim prejudicial. Where the parties here haven't even gotten past the pleading stage, let along begun normal discovery, this is not such a case.

[3]   Defendants' claim on page 4 of their brief that Plaintiff "was not entitled to serve any jurisdictional discovery in the first place" is **false**. Plaintiff's counsel issued jurisdictional discovery at defense counsel's suggestion. Dkt. 19-5 ¶ 2. Fed.R.Civ.P. 26(d)(1) specifically permits discovery before a Rule 26(f) conference "by stipulation." Defense counsel Timothy Hudson even emailed the Court with a proposed schedule contemplating jurisdiction discovery, on January 28, 2021.

[4]   *E.g., Richter v. LG Chem, Ltd.*, 2020 WL 5878017, at \*6 (N.D. Ill. Oct. 2, 2020) (granting motion to dismiss and finding, pre-*Montana Eighth*, that "[t]o give rise to specific personal jurisdiction, 'there must be a causal relationship' between the defendant's contacts with the forum and the alleged injury") (quoting *J.S.T. Corp. v. Foxconn Interconnect Tech. Ltd.*, 965 F.3d 571, 574 (7th Cir. 2020)).

of Illinois consumers like Plaintiff to solicit Benefytt's products and services), this is sufficient for specific personal jurisdiction purposes. The Court should thus grant leave to amend, so that the parties can move on with the case. *Dubicz v. Commonwealth Edison Co.*, 377 F.3d 787, 792-93 (7th Cir. 2004) (district court abused its discretion in denying leave to amend based solely on an eight-month delay in filing the motion, holding that "delay by itself is normally an insufficient reason to deny a motion for leave to amend…. Delay must be coupled with some other reason. Typically, that reason … is prejudice to the non-moving party.")

Defendants fail to articulate any undue prejudice or other reason to deny amendment to any degree of specificity, as required: While Defendants attribute Plaintiff's amendment request to some scheme to have them "engage in costly and time-consuming litigation that continues to postpone resolution of the motion to dismiss," courts uniformly hold that having to defend a lawsuit is not "undue prejudice."[5]

Indeed, Plaintiff's purpose in requesting the amendment is to get this long-stagnant case moving past the pleading stage. Plaintiff filed suit more than seven months ago. Defendants moved to dismiss with a declaration that raised new factual matter outside the four corners of Plaintiff's complaint, and then the parties spent several months thereafter engaging in what Plaintiff had hoped would be fruitful jurisdictional discovery, but which turned out to simply delay the proceedings without Defendants revealing any substantive information at all. Indeed, the only information Plaintiff learned through jurisdictional discovery happened during the meet-

---

[5] *See Kaplan v. JPMorgan Chase Bank, N.A.*, 2015 WL 2358240, at *11 (N.D. Ill. May 12, 2015) (granting leave to amend, finding that "having to 'expend additional resources' to litigate the merits of the case ... does not rise to the level of undue prejudice") (citing cases); *Evco Assocs., Inc. v. C.J. Saporito Plating Co.*, 1995 WL 571438, at *4 (N.D. Ill. Sept. 25, 1995) (granting leave to amend where defendant "fails to assert any specific prejudice it will suffer other than having to defend an additional theory of liability"); *Hall v. Richwine*, 2006 WL 4835918, at *1 (S.D. Ind. June 29, 2006) (granting leave to file second amended complaint, finding that "Defendants ... having to defend the case against them on the merits does not constitute prejudice").

and-confer, where defense counsel refused to discuss whether Defendants had records of the telemarketing calls being transferred to their phone lines. They produced zero documents, and defense counsel admitted during meet-and-confer discussions that they *never even asked* their clients to search for responsive materials. Dkt. 19-5 ¶ 4.

If amending the complaint will get this case moving forward, and Plaintiff thinks it will, then that benefits all parties and judicial economy overall. *Montana Eighth* confirms that the Court has personal jurisdiction, based on Defendants' admitted contacts with Illinois to which Plaintiff's suit relates. The Court should allow Plaintiff to amend his pleadings to support personal jurisdiction in light of this binding precedent and the new information Bryan Krul provided in his declaration for Defendants, so that this case may finally progress.

**B.     The proposed amended complaint is not futile.**

Defendants' opposition to amendment rests on a disingenuous inference that they had nothing to do with the calls at issue. There isn't "some unknown third party" that called Plaintiff. There's a third party Defendants *know*, because they *accepted* Plaintiff's "warm transferred" telemarketing calls, and tried to sell him health insurance. Plaintiff filed a motion to compel jurisdictional discovery concerning that transfer, among other issues. Dkt. 19 pp. 12-17. Regardless, naming the particular vendor from whom Defendants received Plaintiff's telemarketing call transfer isn't a prerequisite to pleading because "a plaintiff need not allege facts completely within the defendant's knowledge at the pleading stage." *Mauer v. Am. Intercontinental Univ., Inc.*, 2016 WL 4651395, at *2 (N.D. Ill. Sept. 7, 2016) (citing *Oliver v. DirecTV, LLC*, 2015 WL 1727251, at *2 (N.D. Ill. Apr. 13, 2015)). This is particularly relevant here, where Defendants are engaging in flagrant gamesmanship by proffering a carefully-worded declaration to try to get the case dismissed on the basis that *they* didn't make the calls, while

omitting the very relevant fact that they had a vendor do the calling for them.[6] Indeed, the fact that Defendants provided Plaintiff with a quotation for insurance, Dkt. 1-1 at Ex. A; Dkt. 30-2 at Ex. A, demonstrates that they knowingly participated in the telemarketing at issue, and ratified it after the fact.

In fact, it is hard to understand Defendants' opposition to amendment here, because they really don't dispute the key facts: The Krul declaration does not dispute, for example, that Plaintiff received calls soliciting Benefytt products and services. Krul does not dispute that ASIA employees directly engaged with Plaintiff over the phone *during* such calling, or that Benefytt likewise emailed Plaintiff application materials and engaged with him during and as a result of the calling at issue. And Defendants also do not dispute the validity of Exhibit A to the complaint, which *attaches* the email and application materials Benefytt sent to Plaintiff *during* one of the calls at issue. Dkt. 1-1; Dkt. 30-2. It's not like the TCPA violations here didn't occur.

Defendants' brief doesn't substantively challenge *any* of these well-pleaded allegations. Moreover, their blanket assertion that "[t]he additional allegations Plaintiff includes in his proposed amended complaint meant to overcome the specific jurisdiction hurdle fare no better than those he asserts in the operative complaint" is conclusory, and wrong. Plaintiff's proposed amended complaint adds substantive, new allegations that plausibly assert each Defendant's liability, and the proper exercise of specific personal jurisdiction by this Court, based on Defendants' own acts exploiting the Illinois market. This is alleged both generally and as to

---

[6] *See Mauer*, 2016 WL 4651395, at *2 ("[A]t the pleading stage [in a TCPA lawsuit], it is irrelevant that a plaintiff cannot identify the third-party telemarketer, or what arrangement that third party had with the defendant vendors because the defendants, and not the plaintiff, are reasonably expected to know this information."); *Charvat v. Allstate Corp.*, 29 F. Supp. 3d 1147, 1151 (N.D. Ill. 2014) (rejecting defense argument that TCPA complaint should be dismissed because plaintiff "'does not identify the third-party telemarketer or lead generator' who initiated the call, nor does he allege 'what arrangement, if any, that third party had with either defendant[,]'" finding that "[t]hese objections are meritless because it is defendants, not plaintiff, who can reasonably be expected to know these facts, and plaintiff's allegations, taken together, suffice to entitle him to discovery on the issue of vicarious liability").

Plaintiff specifically (Dkt. 30-1, FAC ¶¶ 3, 12, 17-24, 34, 38, 40, 44-45, 57), as well as through principles of agency such as actual authority (*Id.* ¶¶ 58-60), apparent authority (*Id.* ¶¶ 60-62) and ratification (*Id.* ¶¶ 63-67). *See, e.g., Bilek v. Nat'l Cong. of Emps., Inc.*, 470 F. Supp. 3d 857, 861-62 (N.D. Ill. 2020) (denying Benefytt's (f/k/a Health Insurance Innovations, Inc.) motion to dismiss, finding TCPA plaintiff adequately pleaded "specific personal jurisdiction … [and] a plausible claim of … vicarious liability … through a chain of agency relationships based on implied actual authority").

Defendants here used a vendor to illegally telemarket to Plaintiff and other Illinois consumers, in which each Defendant directly participated.[7] They knew such calls were being made with Illinois consumers—in fact, they intended this. Dkt. 30-1, FAC ¶¶ 17-24. Not only is it such contacts to which Plaintiff's lawsuit relates, but the TCPA provides for seller liability for illegal calls by a third-party telemarketer. *Aranda v. Caribbean Cruise Line, Inc.*, 179 F. Supp. 3d 817, 831 (N.D. Ill. 2016). This sufficiently alleges specific personal jurisdiction under *Montana Eighth*. If Defendants had anything specific to argue about the alleged futility of these proposed allegations, then they had a whole response brief in which to do so. They didn't. Consequently, the Court should grant Plaintiff's motion.

Defendants' attempt to differentiate this case from the Supreme Court's ruling in *Montana Eighth* falls flat. Nothing in *Montana Eighth* suggests that personal jurisdiction rests on some percentage-based analysis of how much revenue a defendant derives from the forum compared to other jurisdictions: Rather, the inquiry rests on whether the defendant "purposefully avail[ed] itself of the privilege of conducting activities" in the forum, and whether plaintiff's suit

---

[7] ASIA even used sales reps during the calling who had Illinois insurance producer licenses, Dkt. 30-1, FAC ¶ 38, and Benefytt used the Illinois ZIP code provided by the ASIA representative with whom Plaintiff spoke as a factor in determining which quote to provide him, *Id.* ¶ 40, Ex. A.

7

"relate[s] to the defendant's contacts with the forum." *Montana Eighth*, 141 S. Ct. at 1026. Defendants concede that they generated $4.2 million in revenue based on business conducted in Illinois in the first three quarters of 2020, alone. Dkt. 16-1, Krul Decl. ¶ 10. That other states may "enjoy" even worse telemarketing for Defendants than Illinois doesn't negate Plaintiff's injury here or the fact that Defendants telemarket here through vendors, and are thus exploiting the Illinois market to the tune of millions of dollars a year. Dkt. 30-1, FAC ¶¶ 20-21. No one can reasonably deny that millions of dollars in a few months is "substantial business," and it certainly reflects that Defendants are "actively seek[ing] to serve the market" in Illinois. *Id.* ¶¶ 17-23; *Montana Eighth*, 141 S. Ct. at 1026. Moreover, Plaintiff's suit doesn't just "relate to" Defendant's forum-based contacts; it directly *arose from* Defendants' efforts to exploit the Illinois market, because they hired a vendor to generate Plaintiff and other Illinois consumers as leads to be "warm transferred" to ASIA employees to generate business here. SAC ¶¶34, 36-38, 40, 44-45.

    Defendants' argument that they have "differing businesses that should not and cannot be considered as one" ignores their business model, by which ASIA telemarkets for Benefytt. SAC ¶ 3. Broken down by defendant, for ASIA, this means actively trying to sell Benefytt products to Illinois consumers over the phone, and for its parent company Benefytt, this means providing the quote to the ASIA sales rep to provide to the Illinois consumer during the call, emailing the Illinois call recipient the application materials during the call (to be gone over with the ASIA sales rep), and thereafter providing administrative services for any products that are ultimately purchased for use in Illinois. Dkt. 30-1, FAC ¶¶ 17, 25-31, 37-48, Ex. A. Personal jurisdiction exists as to each Defendant, based on its *own* contacts with Illinois, both directly and via principles of agency.

Defendants' argument that only an injury arising from one of their "health insurance products" could give rise to personal jurisdiction, but that an injury resulting from Defendants' *marketing* of such products cannot, misapplies *Montana Eighth*. The Supreme Court's analysis requires consideration of Defendants' "contacts with the forum," which naturally extends to efforts to sell products to consumers. Indeed, the two cases at issue in *Montana Eighth* were products liability matters. The Supreme Court looked to those defendants' marketing activity of the allegedly defective vehicles in the forum states to analyze whether the lawsuits sufficiently "related" to defendants' ties to the state. The Court found that the defendants' marketing activities in the forum states were sufficiently related to the products liability cause of action to confer specific jurisdiction, going so far as to say that it "cannot be thought surprising" that an "automaker regularly marketing a vehicle in a State … will be subject to jurisdiction in the State's courts when the product malfunctions…." *Montana Eighth*, 141 S.Ct. at 1030 (punctuation omitted). Here the analysis is one step closer, because it is the marketing activities themselves into the forum state that are at issue. This case isn't just tangentially related to Defendants' Illinois-based marketing contacts; it literally arises from them.

Finally, Defendants' complaint that they didn't have "clear notice" and could not have reasonably anticipated being sued in Illinois is rich: Not only did *both* Defendants personally participate in the calling at issue into Illinois (an Illinois-licensed ASIA employee was physically on the line with Plaintiff, and Benefytt provided that ASIA employee with the quote to give Plaintiff based on his Illinois ZIP code and even emailed him the application materials attached as Exhibit A to the complaint during the call, Dkt. 30-1, FAC ¶¶ 17, 37-44), but Benefytt is currently defending **another** TCPA class action in the Northern District of Illinois brought by a *different* Illinois consumer Plaintiff's counsel also represents based on telemarketing into this

9

state.[8] Benefytt and ASIA retained a third party to conduct the telemarketing-based lead generation at issue to Plaintiff and other Illinois consumers, and directly participated in soliciting Plaintiff to become an Illinois-based customer *during* the calls. A business cannot hire a third party to violate the law, actively participate in the violation, and then claim "surprise" that they have to defend a lawsuit in the state where they were marketing and the injury was incurred. This Court may thus properly exercise personal jurisdiction over Defendants, and because amending the complaint to further bolster jurisdictional allegations is not futile, Plaintiff's motion should be granted.

## CONCLUSION

For the foregoing reasons, and as stated in Plaintiff's motion, the Court should grant leave for Plaintiff to file his proposed Amended Class Action Complaint.

Respectfully submitted,

Dated: June 11, 2021

GEORGE MOORE, individually and on behalf of others similarly situated

By: */s/ Alexander H. Burke*

Alexander H. Burke
Daniel J. Marovitch
BURKE LAW OFFICES, LLC
909 Davis St., Suite 500
Evanston, IL 60201
Telephone: (312) 729-5288
aburke@burkelawllc.com
dmarovitch@burkelawllc.com

*Counsel for Plaintiff*

---

[8] Defense counsel here even previously represented Benefytt (f/n/a Health Insurance Innovations, Inc.) in that proceeding, *Bilek v. Nat'l Congress of Employers, Inc.*, No. 1:18-cv-03083 (N.D. Ill.).

**CERTIFICATE OF SERVICE**

I hereby certify that, on June 11, 2021, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to all counsel of record.

                                                                      */s/ Alexander H. Burke*