IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| GEORGE MOORE, individually and on behalf of others similarly situated,<br>    Plaintiff,<br><br> v.<br><br>AMERICAN SERVICE INSURANCE AGENCY LLC and BENEFYTT TECHNOLOGIES, INC.,<br>    Defendants. | Case No. 1:20-cv-06206<br><br>Hon. Judge John F. Kness<br>Hon. Mag. Judge Jeffrey Cole |

**PLAINTIFF'S NOTICE OF NEW**
**CONTROLLIONG AUTHORITY**

  Plaintiff wishes to notify the Court of the Seventh Circuit's decision, *Bilek v. Federal Insurance Company*, __ F.4th __, 2021 WL 3503132 (7th Cir. Aug. 10, 2021), which deals with pleading standards and personal jurisdiction in TCPA cases; issues relevant to the motions pending before the Court in this case.

  The decision is attached to this filing.


Dated: August 13, 2021           GEORGE MOORE, individually and
                    on behalf of others similarly situated

                    By:  */s/ Alexander H. Burke*


Alexander H. Burke
Daniel J. Marovitch
BURKE LAW OFFICES, LLC
909 Davis St., Suite 500
Evanston, IL 60201
Telephone: (312) 729-5288
aburke@burkelawllc.com
dmarovitch@burkelawllc.com

*Counsel for Plaintiff*

In the

# United States Court of Appeals

For the Seventh Circuit

———————

No. 20-2504

CHRISTOPHER BILEK,

*Plaintiff-Appellant*,

*v.*

FEDERAL INSURANCE COMPANY, *et al.*,

*Defendants-Appellees*.

———————

Appeal from the United States District Court for the
Northern District of Illinois, Eastern Division.
No. 1:19-cv-08389 — **Charles P. Kocoras**, *Judge*.

———————

ARGUED APRIL 2, 2021 — DECIDED AUGUST 10, 2021

———————

Before WOOD, HAMILTON, and KIRSCH, *Circuit Judges*.

KIRSCH, *Circuit Judge*. Christopher Bilek received two unauthorized robocalls soliciting health insurance that he alleged violated the Telephone Consumer Protection Act and the Illinois Automatic Telephone Dialing Act. Bilek sued Federal Insurance Company and Health Insurance Innovations on a vicarious liability theory, claiming that defendants'

agents generated the unauthorized robocalls.[1] To support his agency allegations, Bilek alleged a web of business relationships: Federal Insurance Company contracted with Health Insurance Innovations to sell its insurance; Health Insurance Innovations hired lead generators to effectuate telemarketing; and the lead generators made the unauthorized robocalls that form the basis of Bilek's claims here.

Though neither Federal Insurance Company nor Health Insurance Innovations initiated the robocalls, Bilek sought to hold defendants vicariously liable for the lead generators' unauthorized calling under three agency theories: actual authority, apparent authority, and ratification. The district court dismissed Bilek's complaint, holding that Bilek failed to plausibly allege agency on any of these grounds. For that reason, the district court dismissed Bilek's claims against Federal Insurance Company for failure to state a claim under Rule 12(b)(6), and it dismissed Health Insurance Innovations for lack of personal jurisdiction under Rule 12(b)(2). We disagree. While we express no view on whether Bilek will ultimately succeed in proving an agency relationship between the lead generators and either Federal Insurance Company or Health Insurance Innovations, Bilek alleges enough at the pleading stage for his complaint to move forward. For the reasons explained below, we reverse and remand.

I

In our review of a district court's Rule 12(b)(6) dismissal, we accept the allegations in the plaintiff's complaint as true

---

[1] When we refer to both Federal Insurance Company and Health Insurance Innovations, we use "defendants" for clarity.

Case: 1:20-cv-06206 Document #: 36 Filed: 08/13/21 Page 4 of 19 PageID #:282
Case: 20-2504　　Document: 51　　Filed: 08/10/2021　　Pages: 18

No. 20-2504　　　　　　　　　　　　　　　　　　　　　　3

and draw all reasonable inferences in plaintiff's favor. See *Taha v. Int'l Brotherhood of Teamsters, Loc. 781*, 947 F.3d 464, 469 (7th Cir. 2020). The same is true in our review of a district court's dismissal for lack of personal jurisdiction under Rule 12(b)(2), where, as here, the district court decides that motion without conducting an evidentiary hearing. See *Tamburo v. Dworkin*, 601 F.3d 693, 700 (7th Cir. 2010). Thus, for the purposes of this appeal, we accept as true Bilek's well-pleaded factual allegations discussed below.

On December 21, 2019, Bilek filed a three-count complaint against Federal Insurance Company and Health Insurance Innovations, alleging claims under the Telephone Consumer Protection Act and Illinois Automatic Telephone Dialing Act. See 47 U.S.C. § 227; 815 ILCS § 305/30(a)(b). Bilek alleged that he received two unauthorized robocalls as a part of a telemarketing campaign initiated by Federal Insurance Company and Health Insurance Innovations to advertise and solicit Federal Insurance Company's health insurance. Federal Insurance Company contracted with Health Insurance Innovations to generate business. Health Insurance Innovations, in turn, contracted with lead generators to conduct telemarketing for Federal Insurance Company's health insurance. Against this backdrop, the lead generators initiated the two robocalls to Bilek's cellphone. On September 20, 2019, Bilek received the first such call on his cellphone. A pre-recorded message solicited health insurance and instructed Bilek to press 1 to be connected to a representative. Bilek pressed 1. Bilek was connected to a live agent who provided a quote for health insurance underwritten by Federal Insurance Company and facilitated by Health Insurance Innovations. Bilek alleged that the live agent he spoke with on the phone identified the insurance as "Chubb" health insurance, and that Chubb insurance as

referenced by the agent was "for Federal Insurance Company," a member of the Chubb family of companies.[2]

Bilek received a second call on his cellphone on September 26, 2019. This second call played the same pre-recorded message. Bilek again pressed 1 and became connected to a live agent who provided a quote for Federal Insurance Company's health insurance. Bilek alleged that he did not consent to either call—both of which Bilek alleged used an automated dialing system and prerecorded voice in violation of the TCPA, 47 U.S.C. § 227, and the Illinois Automatic Telephone Dialing Act, 815 ILCS § 305/30(a)(b).

In his complaint, Bilek alleged that the lead generators acted with Federal Insurance Company's and Health Insurance Innovations' actual and apparent authority, and that defendants ratified the lead generators' unauthorized

---

[2] In the alternative, Bilek alleges that the insurance "was for a different member of the 'Chubb' family of companies, whose identity will be identified through discovery." *Id*. ¶ 20. We accept as true at the pleading stage Bilek's allegation that the insurance solicited was for Federal Insurance Company, recognizing that "we cannot expect, nor does Federal Rule of Civil Procedure 8 require, a plaintiff to plead information []he could not access without discovery." *Runnion ex rel. Runnion v. Girl Scouts of Greater Chicago & Nw. Indiana*, 786 F.3d 510, 529 (7th Cir. 2015). Moreover, Federal Insurance Company does not challenge Bilek's allegation as an "unsupported conclusory factual allegation[]"that is not entitled to the assumption of truth. *Zablocki v. Merchants Credit Guide Co.*, 968 F.3d 620, 623 (7th Cir. 2020) (quotation omitted). While Federal Insurance Company notes in its briefing that the callers did not identify Federal Insurance Company by name, its arguments here are premised on its contention that Bilek failed to plausibly allege that the unnamed callers acted as its agents.

No. 20-2504                                                           5

robocalling. Specifically, Federal Insurance Company gave Health Insurance Innovations and its lead generators authority to use its tradename, approved scripts, and proprietary pricing and product information. Health Insurance Innovations then provided these scripts to its lead generators. It also participated in calls directly by pairing lead generators with quotes through its online portal and emailing quotes to call recipients. Both defendants accepted benefits from the lead generators' robocalls—Federal Insurance Company through the advertisement and sales of its health insurance products, and Health Insurance Innovations through payments for generating leads.

Defendants each moved to dismiss Bilek's complaint. Federal Insurance Company brought a motion to dismiss for failure to state a claim under Rule 12(b)(6), arguing that Bilek failed to plausibly allege an agency relationship between itself and the lead generators. Making the same agency arguments, Health Insurance Innovations moved for dismissal for lack of personal jurisdiction under Rule 12(b)(2). It argued that without alleging a plausible agency relationship, Bilek failed to connect Health Insurance Innovations to Illinois through the lead generators' conduct.[3]

The district court agreed with both defendants, finding that Bilek failed to plausibly allege that the lead generators acted pursuant to a valid agency theory—actual authority, apparent authority, or ratification. On Bilek's actual authority claim, the district court reasoned that Bilek failed to plausibly allege agency because his complaint lacked allegations of

---

[3] Health Insurance Innovations additionally moved for dismissal under Rule 12(b)(6), but the district court declined to reach this ground.

defendants' control over the timing, quantity, and geographic location of the lead generators' unauthorized robocalls. It next found Bilek's apparent authority claims insufficient because he alleged only that the purported agents—not the principals—made manifestations to Bilek. Finally, the district court reasoned that Bilek failed to allege agency under its ratification theory because Bilek did not allege that he purchased health insurance from the robocalls, so according to the district court, defendants accepted no benefits from the lead generators' unauthorized calling.

In light of its determinations on Bilek's three agency theories, the district court held that Bilek neither stated a claim against Federal Insurance Company, nor established a prima facie case of personal jurisdiction over Health Insurance Innovations. Accordingly, the district court dismissed Bilek's complaint and entered final judgment in defendants' favor. This appeal followed.

II

A

We begin our analysis with the district court's Rule 12(b)(6) dismissal of Federal Insurance Company before turning to its dismissal of Health Insurance Innovations for lack of personal jurisdiction. We review a district court's dismissal under Rule 12(b)(6) de novo, "construing the complaint in the light most favorable to the plaintiff[], accepting as true all well-pleaded facts and drawing reasonable inferences in the plaintiff[']s favor." *Yeftich v. Navistar, Inc.*, 722 F.3d 911, 915 (7th Cir. 2013). Yet "we need not accept as true statements of law or unsupported conclusory factual allegations." *Id.*

No. 20-2504 7

Federal Rule of Civil Procedure 8(a)(2) prescribes a plaintiff's pleading standards, and it requires only that a complaint plead "a short and plain statement of the claim showing that the pleader is entitled to relief." If a complaint fails to meet this standard, it may be dismissed under Rule 12(b)(6) for "failure to state a claim upon which relief can be granted." To survive a Rule 12(b)(6) motion to dismiss, a plaintiff must plead facts to "state a claim that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). A claim is plausible where a plaintiff "pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). We have considered that "*Twombly* and *Iqbal* require the plaintiff to 'provid[e] some specific facts' to support the legal claims asserted in the complaint." *McCauley v. City of Chicago*, 671 F.3d 611, 616 (7th Cir. 2011) (quoting *Brooks v. Ross*, 578 F.3d 574, 581 (7th Cir. 2009)). While the required level of specificity "is not easily quantified," a plaintiff must allege "enough details about the subject-matter of the case to present a story that holds together." *Id.* (quotation omitted). Fundamentally, "the plausibility determination is a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *W. Bend Mut. Ins. Co. v. Schumacher*, 844 F.3d 670, 676 (7th Cir. 2016) (quotations omitted).

Bilek alleged that Federal Insurance Company is liable for the lead generators' unauthorized robocalling under actual authority, apparent authority, and ratification principles of agency liability. Each agency theory offers an independent basis for Federal Insurance Company's vicarious liability. See *Dish Network, LLC,* 28 F.C.C. Rcd. 6574, 6584 (2013) (recognizing that a defendant "may be liable for [TCPA] violations by

Case: 1:20-cv-06206 Document #: 36 Filed: 08/13/21 Page 9 of 19 PageID #:287
Case: 20-2504   Document: 51   Filed: 08/10/2021   Pages: 18

8  No. 20-2504

its representatives under a broad range of agency principles, under the federal common law of agency, including not only formal agency, but also principles of apparent authority and ratification"). But we need not reach all three agency theories here. Since "[a] motion to dismiss under Rule 12(b)(6) doesn't permit piecemeal dismissal of *parts* of claims," our inquiry is limited to only whether Bilek's complaint "includes factual allegations that state a plausible claim for relief." *BBL, Inc. v. City of Angola*, 809 F.3d 317, 325 (7th Cir. 2015) (explaining that unlike a motion to dismiss, summary judgment explicitly allows for the parties to move for judgment on parts of claims to narrow individual factual issues for trial). Bilek's complaint does so. By way of example, Bilek states a plausible claim for relief under his actual authority theory of agency liability, so we start and end there.

Actual authority requires that at the time of an agent's conduct, "the agent reasonably believes, in accordance with the principal's manifestations to the agent, that the principal wishes the agent so to act." RESTATEMENT (THIRD) OF AGENCY § 2.01 (2006); see *Moriarty v. Glueckert Funeral Home, Ltd.*, 155 F.3d 859, 866 (7th Cir. 1998). To prove that the lead generators had actual authority, Bilek ultimately must show evidence that (1) a principal/agent relationship exists, (2) the principal controlled or had the right to control the alleged agent's conduct, and (3) the alleged conduct fell within the scope of the agency. See *Spitz v. Proven Winners N. Am., LLC*, 759 F.3d 724, 732 (7th Cir. 2014) (interpreting Illinois law, which like federal common law, accords with the Restatement of Agency, *Opp v. Wheaton Van Lines, Inc.*, 231 F.3d 1060, 1064 (7th Cir. 2000)); see also *Warciak v. Subway Rests., Inc.*, 949 F.3d 354, 357 (7th Cir. 2020)("Express authority exists when a principal

expressly authorizes an agent and the agent acts on the principal's behalf and subject to the principal's control.").

We need not—and do not—decide here whether Bilek's allegations are sufficient, if true, to prove his vicarious liability claims. But we find that his allegations include enough detail to render his actual authority theory of agency liability plausible. Bilek's theory of liability is clear—the lead generators acted as Federal Insurance Company's agents, with actual authority, when they allegedly initiated robocalls to Bilek's cellphone without his consent. And Bilek's underlying factual allegations include enough supporting detail to render this theory plausible. Bilek alleged that the lead generators initiated robocalls that solicited Federal Insurance Company's health insurance, and that Federal Insurance Company authorized the lead generators to use its approved scripts, tradename, and proprietary information in making these calls. Indeed, Bilek spoke with a lead generator directly who quoted him Federal Insurance Company's health insurance. Bilek also alleged that the lead generators were paired with these quotes in real time by Health Insurance Innovations—the company Federal Insurance Company contracted with to sell its insurance. Health Insurance Innovations then emailed quotes to call recipients and permitted the lead generators to enter information into its system. These alleged facts, viewed in the light most favorable to Bilek, support the inference that Federal Insurance Company authorized the lead generators to act on its behalf and subject to its control. See RESTATEMENT (THIRD) OF AGENCY § 2.01; *Warciak,* 949 F.3d at 357. Bilek alleges more than a formulaic recitation of his cause of action, see *W. Bend Mut. Ins. Co.*, 844 F.3d at 675, and he includes specific facts to support his theory of relief, see *McCauley*, 671 F.3d at 616. Nothing more is required to comply with Rule

8(a)(2), nor to meet the plausibility standard articulated by *Twombly* and its progeny.

Federal Insurance Company's contention that Bilek's actual authority allegations fail to meet these pleading standards is unsupported. Federal Insurance Company argues that Bilek failed to state a plausible agency claim to survive a Rule 12(b)(6) dismissal because his complaint lacks allegations that Federal Insurance Company controlled the timing, quantity, and geographic location of the lead generators' robocalls. But allegations of minute details of the parties' business relationship are not required to allege a plausible agency claim. See generally *Tamayo v. Blagojevich*, 526 F.3d 1074, 1081 (7th Cir. 2008) ("A complaint need not allege all, or *any*, of the facts logically entailed by the claim and it certainly need not include evidence.") (quotation omitted)).

Further, while the right to control an agent's actions are a "constant across the relationships of agency," the "content or specific meaning of the right varies." RESTATEMENT (THIRD) OF AGENCY § 1.01 cmt. c (explaining that "a person may be an agent although the principal lacks the right to control the full range of the agent's activities"). And whether an agency relationship exists is ultimately a question of fact. See *United States v. Dish Network L.L.C.*, 954 F.3d 970, 975 (7th Cir. 2020). Bilek need not prove his claims at the pleading stage, and we need not resolve the bounds of Bilek's agency claims here. We decide only that Bilek alleges a plausible claim for relief.

In a final effort to argue that Bilek's complaint fails to assert a claim against it, Federal Insurance Company contends that *Warciak* compels dismissal of Bilek's complaint. But *Warciak* is inapposite to Bilek's allegations here. There, we affirmed the district court's Rule 12(b)(6) dismissal of the

plaintiff's TCPA claims seeking to hold Subway vicariously liable for a promotional text message sent by T-Mobile as a part of its "T-Mobile Tuesdays" campaign. See *Warciak*, 949 F.3d at 356–57. In that campaign, T-Mobile offered free items from various well-known stores to its customers via text message, and the plaintiff alleged that he received one such text message from T-Mobile offering a free Subway sandwich. See *id.* We stopped the plaintiff's vicarious liability claim against Subway in its tracks, holding that allegations of a contract between Subway and T-Mobile—without anything else—failed to allege an agency relationship. See *id.* at 357. We rejected that a commercial contract between two sophisticated businesses was "tantamount to an agency relationship," considering that "[w]hile an agency relationship can be created by contract, not all contractual relationships form an agency." *Id.*

Bilek's complaint is easily distinguishable from *Warciak* both in its level of detail and factual context. As discussed herein, Bilek alleges more than a barebones contractual relationship, and he does enough to plead that the lead generators acted with Federal Insurance Company's actual authority. Bilek alleges that Federal Insurance Company authorized the lead generators, through Health Insurance Innovations, to use its approved scripts, tradename, and proprietary information to solicit and advertise its health insurance. Indeed, Bilek received a robocall, and after pressing 1, he spoke to a lead generator who used this proprietary information to quote Federal Insurance Company's health insurance. In this respect, Federal Insurance Company's telemarketing campaign is nothing like T-Mobile's text messaging promotion in *Warciak*. *Warciak's* allegations that T-Mobile simply promoted another business's products through its own channels is a common advertising arrangement, but it in no way suggests agency. In

direct contrast, Bilek's allegations that the lead generators called Bilek offering to sell him health insurance and quoted Federal Insurance Company's health insurance using its proprietary and pricing information suggests that they were, in fact, acting on Federal Insurance Company's behalf. Unlike in *Warciak*, Bilek's allegations here support the inference that the lead generators acted as Federal Insurance Company's agents with actual authority.

\* \* \*

With a viable agency claim on its actual authority theory, Bilek's complaint moves forward at this pleading stage. In reaching this result, we need not and do not reach Bilek's apparent authority and ratification theories of agency liability. Of course, the parties may pursue discovery on these theories. And the parties may move for summary judgment on all or any part of Bilek's claims. Fed. R. Civ. P. 56(a). At this stage, we hold only that Bilek's complaint should not have been dismissed under Rule 12(b)(6).

B

Turning now to the district court's dismissal of Health Insurance Innovations, we review a district court's dismissal for lack of personal jurisdiction de novo. See *Matlin v. Spin Master Corp.*, 921 F.3d 701, 704 (7th Cir. 2019). When a district court decides a motion to dismiss for lack of personal jurisdiction without conducting an evidentiary hearing, as here, a plaintiff need only make out a prima facie case of personal jurisdiction. See *Matlin*, 921 F.3d at 705. "We take as true all well-pleaded facts alleged in the complaint and resolve any factual disputes … in favor of the plaintiffs." *Id.* (quotation and alterations omitted).

No. 20-2504                                                                13

Because Bilek's complaint raises both federal and state law claims, the district court properly exercised subject matter jurisdiction over Bilek's claims under federal question jurisdiction, 28 U.S.C. § 1331, and supplemental jurisdiction, 28 U.S.C. § 1367. As to the district court's personal jurisdiction, in a federal question case, "a federal court has personal jurisdiction over the defendant if either federal law or the law of the state in which the court sits authorizes service of process to that defendant." *Curry v. Revolution Labs, LLC*, 949 F.3d 385, 393 (7th Cir. 2020) (quotation omitted). Bilek's federal claim arises under the TCPA, which does not authorize nationwide service process in a private cause of action. See 47 U.S.C. § 227. Therefore, "a federal court sitting in Illinois may exercise jurisdiction over the defendants in this case only if authorized both by Illinois law and by the United States Constitution." *Curry*, 949 F.3d at 393 (quotation and alteration omitted).

The Illinois long-arm statute authorizes jurisdiction over a non-resident through conduct of an agent. See 735 ILCS 5/2-209(a). In addition, § 2-209(c) provides a catch-all provision, permitting a court's exercise of jurisdiction to the full extent permitted by the Illinois and United States Constitutions. See 735 ILCS 5/2-209(c). Accordingly, we have held that "the Illinois long-arm statute permits the exercise of personal jurisdiction to the full extent permitted by the Fourteenth Amendment's Due Process Clause." *Curry*, 949 F.3d at 393 (quotation omitted); see *Mobile Anesthesiologists Chicago, LLC v. Anesthesia Assocs. of Houston Metroplex, P.A.*, 623 F.3d 440, 443 (7th Cir. 2010) ("We have held that there is no operative difference between [the Illinois and federal] constitutional limits."). Thus, we proceed with a federal due process analysis. See *Curry*, 949 F.3d at 393.

To comport with federal due process, a defendant must maintain "'minimum contacts'" with the forum state such that "the maintenance of the suit 'does not offend traditional notions of fair play and substantial justice.'" *Tamburo*, 601 F.3d at 701 (quoting *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945)). When considering due process for specific personal jurisdiction, we must determine whether "(1) the defendant has purposefully directed his activities at the forum state or purposefully availed himself of the privilege of conducting business in that state, and (2) the alleged injury arises out of the defendant's forum-related activities." *Id.* at 702 (citing *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 472 (1985)).

Relying on the same three agency theories invoked against Federal Insurance Company (actual authority, apparent authority, and ratification), Bilek asserts that the district court has specific personal jurisdiction over Health Insurance Innovations through the lead generators' alleged conduct. Significantly, Health Insurance Innovations does not contest that the lead generators' conduct would be independently sufficient to establish personal jurisdiction over the non-party callers for Bilek's TCPA and IATDA claims. Thus, the question here is whether the lead generators' initiation of robocalls to Bilek in Illinois can establish a prima facie case of specific personal jurisdiction over Health Insurance Innovations. Resolving this question turns on whether Bilek sufficiently alleges that the lead generators are "agents" of Health Insurance Innovations.

Before reaching this question, however, we note that this circuit's case law addressing agency in the personal jurisdiction context is limited. Bilek seeks to attribute the lead generators' alleged conduct to Health Insurance Innovations to establish specific personal jurisdiction over Health Insurance

No. 20-2504                                                                                    15

Innovations. While plainly authorized by the Illinois long-arm statute, 735 ILCS 5/2-209(a), we have never explicitly held the attribution of an agent's conduct to a principal to establish specific personal jurisdiction comports with federal due process. We hold now that it does, joining other circuits that have recognized the same. See, *e.g.*, *Nandjou v. Marriott Int'l, Inc.*, 985 F.3d 135, 150 (1st Cir. 2021) ("[F]or purposes of personal jurisdiction, the actions of an agent may be attributed to the principal."); *Celgard, LLC v. SK Innovation Co.*, 792 F.3d 1373, 1379 (Fed. Cir. 2015) ("For purposes of specific personal jurisdiction, the contacts of a third-party may be imputed to the defendant under either an agency or alter ego theory."); *Myers v. Bennett Law Offices*, 238 F.3d 1068, 1073 (9th Cir. 2001) (same with respect to agency).

In reaching this conclusion, we recognize that an agent's conduct directed at the forum state has long been considered pertinent in the specific personal jurisdiction context both by the Supreme Court and this circuit. See *Asahi Metal Indus. Co. v. Superior Ct. of California*, 480 U.S. 102, 112 (1987) (analyzing whether a defendant's marketing of a product "through a distributor who has agreed to serve as the sales agent in the forum State" may show purposeful availment); *New Process Steel, L.P. v. PH GR, Inc.*, 107 F. App'x 641, 642 (7th Cir. 2004) (analyzing, in an unpublished order, whether the acts of an agent can be used to establish personal jurisdiction over a principal should agency be established); *Wisconsin Elec. Mfg. Co. v. Pennant Prods., Inc.*, 619 F.2d 676, 677 (7th Cir. 1980) (finding that two visits by defendant's agents to the forum state in connection with negotiating a contract established specific personal jurisdiction over defendant). Our consideration of an agent's contacts in determining whether a defendant purposefully availed itself of the forum state, thus, breaks

Case: 1:20-cv-06206 Document #: 36 Filed: 08/13/21 Page 17 of 19 PageID #:295
Case: 20-2504      Document: 51      Filed: 08/10/2021      Pages: 18

16                                                              No. 20-2504

little new ground. Considering these authorities, supported by the fundamental agency principle that a principal is liable for the wrongful acts of an agent acting within its authority, see *Dish Network L.L.C.*, 954 F.3d at 976, it follows that attributing an agent's suit-related contacts to a principal to establish specific personal jurisdiction poses no due process bar.

We note briefly that the Supreme Court has limited the attribution of an agent's contacts to a principal in the general personal jurisdiction context. See *Daimler AG v. Bauman*, 571 U.S. 117, 134–36 (2014). But *Daimler* does not alter our specific personal jurisdiction inquiry. There, the Supreme Court rejected the Ninth Circuit's test for attributing an agent's contacts to a principal for general personal jurisdiction, but it nevertheless recognized that agency relationships "may be relevant to the existence of *specific* personal jurisdiction." *Id.* at 135 n.13. In contrast to general, all-purpose jurisdiction addressed by *Dailmer*—arising only where a corporation's contacts are so "continuous and systematic as to render [it] essentially at home in the forum State"—specific personal jurisdiction is "confined to adjudication of issues deriving from, or connected with, the very controversy that establishes jurisdiction." *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 915, 919 (2011) (quotations omitted). For that purpose, attributing an agent's actions to a principal which are intertwined with the very controversy at issue is consistent with the purposeful availment requirement underlying the Supreme Court's specific personal jurisdiction precedent. See *Burger King Corp.*, 471 U.S. at 474.

Here, the lead generators' alleged conduct forms the basis of Bilek's TCPA and IATDA claims. Bilek plainly alleges that the lead generators made the illegal phone calls to Bilek in

Illinois. And just as with Federal Insurance Company, Bilek's supporting agency allegations adequately allege that the lead generators acted with Health Insurance Innovations' actual authority. See RESTATEMENT (THIRD) OF AGENCY § 1.01; § 2.01; see *Moriarty*, 155 F.3d at 866. Bilek alleges not only that Health Insurance Innovations contracted with the agents directly to tele-market Federal Insurance Company's health insurance, but that Health Insurance Innovations participated in the calls in real-time by pairing the agents with Federal Insurance Company's health insurance quotes, emailing quotes to call recipients, and permitting its agents to enter information into its system. These well-pled factual allegations are enough to support an agency relationship on actual authority grounds at the pleading stage. As a result, Bilek establishes a prima facie case of personal jurisdiction over Health Insurance Innovations.

Health Insurance Innovations' arguments to the contrary are not persuasive. Indeed, it primarily relies on the same futile arguments put forward by Federal Insurance Company: it contends that a plausible agency relationship is lacking because Bilek did not allege that Health Insurance Innovations controlled the timing, quantity, or geographic location of the alleged phone calls. But for the same reasons addressed with respect to Federal Insurance Company—which we need not repeat here—such allegations are not necessary to allege an agency relationship between the lead generators and Health Insurance Innovations at the pleading stage.

Finally, Health Insurance Innovations contends that Bilek's allegation that it emailed quotes to call recipients should be disregarded because Bilek himself does not claim to have received an email. If anything, Health Insurance

Innovations only parses Bilek's allegations at the margins here. But, in any event, this allegation is consistent with Bilek's overarching agency theory—the lead generators acted with Health Insurance Innovations' actual authority in making the unauthorized robocalls. In sum, Bilek alleges enough to show an agency relationship between the lead generators and Health Insurance Innovations. As a consequence, the district court erred in finding it lacked personal jurisdiction over Health Insurance Innovations.

III

We REVERSE the final judgment of the district court, and the case is REMANDED for further proceedings consistent with this opinion.