IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| GEORGE MOORE, individually and on behalf of others similarly situated,<br><br>        Plaintiff,<br>  v.<br><br>AMERICAN SERVICE INSURANCE AGENCY LLC and BENEFYTT TECHNOLOGIES, INC.,<br><br>        Defendants. | No. 20-cv-06206<br><br>Judge John F. Kness |

## ORDER

Plaintiff's motion for leave to file an amended complaint (Dkt. 30) is granted. Plaintiff must file the amended complaint separately on the docket on or before April 7, 2023. Defendants' motion to dismiss for lack of jurisdiction (Dkt. 16) and Plaintiff's motion to compel jurisdictional discovery (Dkt. 19) are dismissed as moot. See accompanying Statement for details. A status hearing will be set by separate order.

## STATEMENT

Plaintiff George Moore ("Moore") sued Defendants, American Service Insurance Agency LLC ("ASIA") and Benefytt Technologies, Inc. ("Benefytt"), over telemarketing calls allegedly made by or on behalf of Benefytt and its subsidiary ASIA. Plaintiff alleges that these calls violated the Telephone Consumer Protection Act ("TCPA"), 47 U.S.C. § 227. Benefytt is a third-party administrator that develops and services health insurance products, and ASIA is an independent sales agency that acts as a seller of those health insurance products. (Dkt. 33 at 11).

After Plaintiff filed this case, Defendants moved to dismiss for lack of personal jurisdiction. (Dkt. 16.) Both sides then agreed to conduct jurisdictional discovery, but they were ultimately unable to agree on what Defendants would produce. That dispute led Plaintiff to file a motion to compel production of the requested discovery. (Dkt. 19.) After the motion to compel was fully briefed, however, Plaintiff filed a motion for leave to file an amended complaint. According to Plaintiff, it "makes the most sense [for Plaintiff] to simply amend his pleadings to address Defendant's (sic) assertions [in the motion to dismiss] and include further allegations supporting this Court's jurisdiction." (Dkt. 30 at 4.) Plaintiff contends good cause exists to allow an

amended complaint because (1) Plaintiff can add admissions by Defendants that were not available at the time of the initial pleading; and (2) Plaintiff can also add allegations that would moot the concerns over personal jurisdiction raised in Defendants' motion to dismiss. (*Id.*) Defendants oppose any amendment to the complaint and contend that (1) Plaintiff's dilatory behavior is unjustified and prejudicial to Defendants; and (2) the proposed amendment is futile. (Dkt. 33 at 6, 8.)

Rule 15 of the Federal Rules of Civil Procedure provides that where a party cannot amend its pleadings as a matter of course, that party may amend its pleading only with the opposing party's written consent or the court's leave. Fed. R. Civ. P. 15(a)(2). Granting a motion to file an amended pleading is a matter within the sound discretion of the district court. *Brunt v. Serv. Employees Int'l Union*, 284 F.3d 715, 720 (7th Cir. 2002). When a plaintiff seeks leave to amend the complaint, district courts should freely give leave when justice so requires. *NewSpin Sports, LLC v. Arrow Elecs., Inc.*, 910 F.3d 293, 310 (7th Cir. 2018) (Rule 15 requires district courts to allow amendment "unless there is a good reason—futility, undue delay, undue prejudice, or bad faith—for denying leave to amend.")

Defendants first argue that Plaintiff's undue delay in bringing the motion to amend is enough reason to deny the motion. A finding of undue delay at the pleading stage, however, is unusual. *Dubicz v. Commonwealth Edison Co.*, 377 F.3d 787, 793 (7th Cir. 2004) (reversing denial of leave to amend for undue delay at pleading stage where the only prejudice to defendant was unsupported allegation of loss of evidence). Undue delay more commonly is found where a plaintiff seeks leave to amend deep into the litigation, after discovery is well underway. *See, e.g.*, *Sanders v. Venture Stores, Inc.,* 56 F.3d 771, 773–74 (7th Cir.1995) (affirming denial of leave to amend after close of discovery because more discovery would be necessary.) Delay alone, without a showing of prejudice from the delay, most often will not justify the denial of leave to amend. *Tragarz v. Keene Corp.*, 980 F.2d 411, 432 (7th Cir.1992). This is because the underlying concern is prejudice to the defendant, not merely the passage of time. *Id.; Zenith Radio Corp. v. Hazeltine Research, Inc., 401 U.S. 321, 330–31 (1971).*

As the proponent of amendment, Plaintiff bears the burden of proving that Defendants will not suffer undue prejudice if the amendment is allowed. *King v. Cooke*, 26 F.3d 720, 724 (7th Cir. 1994) (affirming grant of motion to amend answer more than three years after its filing.). Plaintiff filed this case on October 19, 2020. Fewer than seven months later, and five months after Defendants moved to dismiss, Plaintiff moved to amend. But the motion to dismiss was never briefed or decided, and there was, at most, a five-month delay before Plaintiff moved to amend. Defendants theorize that this delay "is, by itself, justification enough for the denial of leave to amend" (Dkt. 33 at 7), but the Seventh Circuit has explained that delay alone cannot justify the denial of leave to amend. *Tragarz,* 980 F.2d at 432. Nor is Plaintiff's five-month delay per se unreasonable. *See, e.g. King*, 26 F.3d at 724 (amendment

2

permissible more than three years after case was filed). In any event, the five months of delay were not devoid of activity: the parties engaged in jurisdictional discovery by (1) agreeing to conduct discovery; (2) propounding and responding to that discovery; (3) meeting and conferring over disputes relating to that discovery; and (4) filing and briefing a motion to compel that discovery. Only after the attempt to address the jurisdictional issues through discovery stalled did Plaintiff pivot to the motion to amend. To the extent there was delay, therefore, it did not amount to *undue* delay.

There is also no threat of undue prejudice to Defendants if amendment is allowed at this stage. Defendants suggest that Plaintiff waited five months from the filing of the motion to dismiss before filing the motion to amend so that Defendants would be forced to engage in costly and time-consuming litigation. (Dkt. 33 at 8.) But it is not apparent beyond peradventure that Plaintiff would purposely do so and thus delay the case he brought. On the contrary, moving to amend before resolving the motions to dismiss and to compel could demonstrate Plaintiff's intent to move this matter forward, not delay it. Plaintiff's approach could also be viewed as seeking efficiency by eliminating some jurisdiction-related disputes and discovery.

But even if Plaintiff was intentionally seeking to cause delay and increase costs by asking for leave to amend, that delay and cost would not constitute undue prejudice. *Cf. Access Living of Metro. Chicago v. Uber Techs., Inc.*, 958 F.3d 604, 616 (7th Cir. 2020) (affirming district court's denial of plaintiff's motion to amend because the motion came "after more than two years of discovery, and shortly before it would close," and the amendment's "proposed expansion is massive.") Because this case is at a procedurally early stage, any delay or prejudice would not be undue such that leave to amend should be denied.

Defendants separately contend that the proposed amendment would be futile. District courts may refuse to entertain a proposed amendment on futility grounds when the new pleading would not survive a motion to dismiss. *Gandhi v. Sitara Capital Mgmt., LLC*, 721 F.3d 865, 869 (7th Cir.2013). An amendment is futile if it fails to remedy the jurisdictional defects of a complaint. *Williams v. U.S. Postal Serv.*, 873 F.2d 1069, 1072 (7th Cir. 1989). Defendants argue that Plaintiff cannot establish either general or specific personal jurisdiction, and thus, by extension, jurisdiction to certify a nationwide class.[1] (*See* Dkt. 16.) There is no general jurisdiction over Defendants, so the issue is whether the allegations in the proposed complaint might somehow establish specific personal jurisdiction.

---

[1] To certify a class, "the named representatives must be able to demonstrate either general or specific jurisdiction [over the defendant], but the unnamed class members are not required to do so." *Mussat v. IQVIA, Inc.*, 953 F.3d 441, 447 (7th Cir. 2020). Because Plaintiff, the class representative, can demonstrate that the court has specific personal jurisdiction over the Defendants, the possibility that a class might be certified cannot be foreclosed at this stage. *See id.* at 447-48.

3

Courts engage in a three-step inquiry to decide whether specific personal jurisdiction may be exercised. *Cent. States, Se. & Sw. Areas Pension Fund v. Reimer Express World Corp.,* 230 F.3d 934, 944 (7th Cir. 2000). First, the Court identifies the contacts the defendant has with the forum; then the Court analyzes whether these contacts meet constitutional minimums and whether exercising jurisdiction on the basis of these minimum contacts sufficiently comports with fairness and justice; and finally, the Court determines whether the sufficient minimum contacts, if any, arise out of or are related to the causes of action involved in the suit. *Id.* Personal jurisdiction is proper where a defendant has purposefully established minimum contacts with the forum such that he should reasonably anticipate being haled into court there. *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 474 (1985). To establish such a reasonable anticipation, the defendant must have purposefully availed itself of the privilege of conducting activities in the forum, invoking the benefits and protections of its laws. *Id.* Once minimum contacts are established, a court must examine other factors, such as the forum's interest in adjudicating the dispute and the burden on the defendant, to determine whether the exercise of personal jurisdiction satisfies traditional notions of fair play and substantial justice. *Id.* at 476–77.

Plaintiff's proposed complaint alleges "Defendants knowingly made or caused to be made the calls that are the subject of this lawsuit." (Dkt. 30-1 ¶ 17; Dkt. 33 at 12.) Plaintiff specifically alleges "[ASIA] or someone on its behalf called Plaintiff dozens of times in attempts to sell him insurance and healthcare-related goods and services" and "these calls [were] made for the purpose of furthering ASIA's efforts to sell Benefytt's and others' healthcare-related goods and services to Plaintiff in Illinois." (Dkt. 30-1 ¶¶ 1, 3.) Plaintiff is an Illinois resident and was in Illinois when he received those calls. (*Id.* ¶ 12.) Plaintiff alleges that the soliciting and selling of insurance occurred during the calls. (*Id.* ¶ 17). Defendants regularly market, sell, and service insurance contracts in Illinois, to Illinois residents. (Dkt. 30-1 ¶ 17; Dkt. 16-1 ¶10.) Plaintiff alleges, based on Defendants' admission, that in the first three quarters of 2020, the consolidated revenue for Benefytt and ASIA attributable to business in the State of Illinois was $4.2 million (approximately 2.5% of its total sales). (Dkt. 30-1 ¶ 20; Dkt. 16-1 ¶ 10.) Plaintiff alleges "most if not all of this revenue was generated through the telemarketing." (Dkt. 30-1 ¶ 20.)

Defendants' admission of multimillion dollar revenues from Illinois customers could very well show they have substantial contacts with Illinois. These contacts arguably meet the constitutional minimum because Defendants purposefully availed themselves of the privilege of conducting activities in Illinois and there is a substantial connection between Defendants and Illinois. *Ford Motor Co. v. Montana Eighth Jud. Dist. Ct.*, 141 S. Ct. 1017, 1026 (2021); *Asahi*, 480 U.S. at 109 (1987). By conducting extensive business in Illinois, Defendants enjoy the benefits and protection of Illinois laws: the enforcement of contracts, the defense of property, and the resulting formation of effective markets. *Ford Motor Co.,* 141 S. Ct. at 1030. In

4

enjoying those benefits and protections, Defendants ought to anticipate being sued there. *Burger King*, 471 U.S. at 474–5 (citation omitted).

Defendants contend that Plaintiff's TCPA claims do not relate to any of Defendants' activities in Illinois because the calls "were not, and could not have been[,] made by either Benefytt or ASIA." (Dkt. 16 at 7; Dkt. 16-1 ¶ 6.) But Defendants do not dispute that they were participants in those calls—only that they did not make the calls. (Dkt. 16-1.) Being sued in a state where Defendants are alleged to earn millions in revenue comports with fairness and justice regardless of whether Defendants are placing the calls themselves or utilizing some third party. Plaintiff's allegations in the proposed amended complaint, accepted as true, are thus sufficient to show that amendment is not futile with regard to specific personal jurisdiction. Futility is therefore not a reason to deny the motion to amend.[2]

In view of Rule 15's liberal standard for amendment, the Court grants Plaintiff leave to file an amended complaint. And because the proposed amendment nullifies the original complaint, the motion to dismiss is dismissed as moot. Finally, because the proposed amendment purports to correct the jurisdictional issue, the motion to compel jurisdictional discovery is similarly dismissed as moot.

SO ORDERED in No. 20-cv-06206.

Date: March 29, 2023

JOHN F. KNESS
United States District Judge

---

[2] It bears emphasis that the Court's task now is to decide whether the proposed amended complaint would be futile, not to resolve finally whether personal jurisdiction exists. Finding that the amended complaint is not futile is without prejudice to Defendants' again raising a personal jurisdiction defense in their response to the amended complaint.